STATE, *ex rel.* EARNEST GOODWIN, v. ROBERT W. MILBURN, as Chief of Police of the District of West Palm Beach.

158 So. 884.

Opinion Filed January 21, 1935.

212

*Elmore Cohen,* for Plaintiff in Error;
*Paul W. Potter,* for Defendant in Error.

BUFORD, J.—This case is before us on writ of error to a judgment of the Circuit Court of Palm Beach County in habeas corpus proceeding wherein the petitioner in the court below, plaintiff in error here, was remanded to the custody of the Chief of Police of the District of West Palm · Beach under a judgment of confliction of the Municipal Court for the violation of an ordinance fixing a license tax of $25.00 on each and every bus, taxi cab, automobile for hire or jitney not licensed to do business by the State Railroad Commission and which operates over the streets, avenues or boulevards of said city.

This ordinance was enacted by the City Commission on

the 27th day of September, 1933, and under the charter of the city it is provided that ordinances, such as the one here under consideration, should go into effect ten days after being enacted. There was another ordinance of the city enacted on September 20, 1933, which imposed a license tax of $25.00 for each company engaged in the business of transporting passengers for hire and wholly within the city. Now it appears that the second ordinance taken *in pari materia* with the first provided one license tax of $25.00 per annum for any person, firm or corporation to engage in the business of transporting passengers and an additional license tax of $25.00 for each vehicle used in such business.

There are two objections raised to the ordinance. The first is that these two ordinances constitute double taxation. This contention is apaprently not seriously relied upon or contended for and we think it is without merit.

The other contention is that this ordinance has never become an ordinance of the District of West Palm Beach because it was enacted by the City Commission of the City of West Palm Beach only three days prior to the date upon which the statute abolishing the Municipality of West Palm Beach became effective and the same statute creating the District of West Palm Beach became effective October 1st, 1933, and no ordinance of the City of West Palm Beach under the terms of the charter of 1923 became effective until ten days after the enactment of the ordinance.

By Chapter 16759, Special Acts of 1933, the governmental powers and functions of the old City of West Palm Beach were vested in the District of West Palm Beach thereby created and Sections 62 and 75 of that Act gave the same power to impose taxes on business, professions and occupations, and the power to regulate motor vehicles, hacks, liveries and other vehicles used or operated as had been

vested in the City of West Palm Beach by the provisions of Section 60 and 76 of the Charter Act, Chapter 9945, Special Acts of 1923.

Section 149 of Chapter 16759, *supra,* provided as follows:

"Section 149. That the ordinance of the former City of West Palm Beach relative to police, fire and sanitation and all other ordinances of said city, except those involving any indebtedness, warrant, bond, note or other obligation of said city shall be and remain the ordinance of the District hereby organized, established and created until altered, amended, modified or repealed by the commission of said District hereby organized, established and created."

Section 152 of Chapter 16759, *supra,* provided as follows:

"This Act shall not become effective unless this Act together with its companion bill to abolish the City of West Palm Beach and to create a municipality of West Palm Beach also be approved by a majority of the registered and qualified electors of the District of West Palm Beach, in Palm Beach County, Florida, actually voting at the election to be held as hereinafter provided; that this Act shall be approved or disapproved as a whole, and shall, if approved, become effective on the first day of October, A. D. 1933."

That the charter Act, *supra,* became effective October 1, 1933, is not challenged.

On October 2, 1933, an ordinance was adopted by the law-making municipal authority which provides, as pleaded, in part as follows:

"SECTION 1. That all ordinances and parts of ordinances of the City of West Palm Beach in Palm Beach County, Florida, in force and effect on the 30th day of September, A. D. 1933, relative to the operation and government of said City of West Palm Beach be and the same are hereby ratified, approved, accepted and adopted as the ordinances

of the District of West Palm Beach in Palm Beach County, Florida."

It is possible that the ordinance of October 2nd last above quoted was not sufficient to include the ordinance here under attack because that ordinance had not then become an ordinance in effect.

The ordinance imposing license tax of $25.00 upon every bus, taxi cab, automobile for hire or jitney which is not licensed to do business by the State Railroad Commission and which operates over and upon the streets, avenues and boulevards of said City was Ordinance No. 275. As heretofore stated, it was enacted on September 27, 1933. Therefore, it was at the date when Chapter 16579 became effective an ordinance of the City of West Palm Beach, though it had not then become effective by the running of the period of ten days which was required by the charter to intervene, between the date of enactment and the date when such ordinances should become effective.

It is contended that only those ordinances which were effective prior to the date when Chapter 16759 was enacted constituted the ordinances of the City of West Palm Beach which became ordinances by operation of Section 149 of Chapter 16759.

We do not think this contention is tenable. It was the intent, purpose and accomplishment of the legislative Act to carry into as operative under the charter of the District of West Palm Beach all ordinances which had been enacted and stood as ordinances of the City of West Palm Beach when the charter of the District of West Palm Beach should become effective and operative with the same force and effect as they would have continued to be ordinances of the City of West Palm Beach, had the change in name and charter not been enacted by the Legislature.

In State v. City of Miami, 101 Fla. 292, 134 Sou. 608, we said:

"It is first contended that Series 'T' and 'V' should not have been validated because the bonds they were designed to refund were issued subsequent to the enactment of Chapter 11855, Acts of 1927.

"This contention is bottomed on the claim that Chapter 11855, Acts of 1927, has no prospective effect and authorizes the refunding of no indebtedness, other than that *in esse* at the date of the passage of that Act. It is true that Section 1 of Chapter 11855, after enumerating the governmental entities that may refund and the species of indebtedness that may be refunded, employs the present perfect tense of the verb 'is pledged' to express its mandate. If courts were bound to a rigid literal interpretation of terms there might be substance in this contention, but is too well settled for argument that in the application of a statute, if there should be apparent variance between its clear intent and its literal implication, courts will adopt the former rather than the latter application.

"The complement of this rule is that when a statute is expressed in general terms and in words of the present tense, it will generally be construed to apply not only to things and conditions existing at the time of its passage, but will also be given a prospective effect and made to apply to such as come into existence thereafter. 36 Cyc. 1235. Finding no intention expressed or implied to restrict the application of Chapter 11855 to the refunding of bonds issued prior to its passage, we think it must be prospective in effect and authorizes the refunding of bonds issued prior to and subsequent to its passage."

This is in line with the weight of authority on this subject.

In 43 C. J. 167, Section 154, the compiler says:

"Ordinarily an amendment of a municipal charter or re-organization under a new charter will operate to repeal all ordinances, by-laws, etc., or parts of the same, insofar as they are in conflict therewith. Conversely there is no repeal of existing ordinances which are not inconsistent with the amendment, new charter, or provisions of a general law adopted by the municipality. Sometimes express provision is made whereby existing ordinances are continued in force until altered, amended, or repealed, or whereby former charter provisions are retained and continued in effect as ordinances. A new charter may furnish legislative authority for the passage of ordinances."

In McQuillian, on Municipal Corporations, 2nd Edition, Vol. 1, page 440, the writer says:

"While the adoption of the general incorporation law by a municipal corporation organized under special charter repeals all inconsistent provisions of such charter, all ordinances and resolutions in force remain until altered or repealed unless inconsistent with the law applicable to the new organization. Mere changes in Municipal charters ordinarily do not affect existing ordinances in harmony with the new provisions."

In Ferrell v. City of Opelika, 144 Ala. 135, 39 Sou. 249, the Supreme Court of Alabama said:

"On the 20th of February, 1899 (Acts 1898-99, p. 1133), the Legislature passed another Act, 'to establish a new charter for the district of Opelika, which contained like provisions as to assaults and assaults and batteries, and the passage of laws generally for the good of the district, as the two last acts already referred to.

"Thereafter, on the 21st of February, 1899 (Acts 1898-99, p. 932), an Act was passed to change the corporate name of

the district to the name of the City of Opelika. Said Act of the 20th of February to establish a new charter for the district of Opelika contained the provisions, that 'all existing laws and ordinances of said city, adopted in pursuance of said law, shall remain in force until repealed or modified by the board, as far as the same are not in conflict with this charter, and all powers granted by this Act must be liberally construed in favor of the power of the city to pass such laws."

"The change of the city charter does not affect existing ordinances in harmony with new provisions." Dillon on Mun. Co.; No. 85, 419.

"Under the older charters, the city or district had the power to pass the ordinance set out in the complainant, and it was continued in force and effect by the charter itself. The limits of the city under the new charter and the district acts were indentical."

In the case of Centress v. Town of Clayton, 185 Ala. 349, 51 Sou. 763, this holding was reiterated. See also Sloss-Sheffield Steel & Iron Co. v. Smith, 175 Ala. 260, 57 Sou. 29.

In Mr. Dillon's Municipal Corporations, 5th Edition, Vol. 1, Section 233, the writer says:

"The powers conferred upon municipal corporations may at any time be altered or repealed by the Legislature, either by a *general law* operating upon the whole State, or in absence of constitutional restriction, by a *special Act*. A charter may be amended, the name of the place and of the governing body may be changed, and its boundaries altered, while in law the corporation remains the same. The *insertion in an amended charter of the same provisions* that were contained in the old is not unless such upon the whole Act appears to have been the intention of the Legislature, a repeal of the latter. The law on this subject is thus stated:

'Where a statute does not, in express terms, annul a right or power given to a corporation by a former Act, but only confers the same rights and powers under a new name, and with additional powers, such subsequent Act does not annul the rights and powers given under the former Act and under its former name, there being no express repeal. The change of a city charter does not affect existing ordinances in harmony with new provisions."

In Trustees of the Erie Academy v. The City of Erie, 1 Pa. 515, Mr. Justice STRONG, speaking for the Court, said:

"There is no doctrine better settled than that a change in the form of government of a community does not *ipso facto* abrogate pre-existing law, either written or unwritten. This is true in regard to what is strictly municipal law, even when the change is by conquest. The Act of Assembly converting the borough into a city did not, therefore, of itself, and in the absence of express provisions to that effect, either repeal former Acts of Assembly relative to the boroughs, or annul existing ordinances. It was solely a change of the organic law for the future, and left unaffected the borough statutes, precisely as a change of a state constitution leaves undisturbed all prior Acts of Assembly. Were it not so, the new Municipal organization would have been without law until its local Legislature could re-enact, publish and put in force a new system. Undoubtedly the Legislature of 1851 could have repealed all former Acts relative to the borough, and have annulled all prior ordinances of the borough authorities; but it did not."

Many other authorities could be cited to the same effect.

We have considered the other questions presented by assignments of error and the briefs and find no reversible error made to appear. Therefore, the judgment should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.