CITY OF DeLAND v. FLORIDA PUBLIC SERVICE COMPANY.

No. 1.

161 So. 735.

Opinion Filed May 21, 1935.

*D. C. Hull, Hull, Landis & Whitehair,* for Appellant;

*J. E. Futch, Scarlett & Futch,* and *E. W. & R. C. Davis,* for Appellee.

DAVIS, J.—The Florida Public Service Company brought this suit to restrain the enforcement of a certain ordinance of the City of DeLand imposing on it as the solely affected party, a special municipal tax equal to ten per cent. of the charge made by it on each and every sale of electricity in said city, regardless of the purpose thereof. The Circuit Court upon final hearing, after full proofs of the allegation pro and con set forth in the pleadings, perpetually enjoined the enforcement of the ordinance as complained of by the plaintiff below (hereinafter referred to in this opinion as the "power company"). The City of DeLand (hereinafter referred to as "the City") has appealed from that final decree.

The ordinance in controversy is as follows:

"AN ORDINANCE Levying a Tax on Sales of Electricity, Providing for the Collection of such Tax, and Prescribing Penalties for the Violation of the Provisions of such Ordinance.

"BE IT ORDAINED BY THE CITY COMMISSION OF THE CITY OF DELAND:

"Section 1. That there is hereby levied by the City of DeLand, on each and every sale of electricity in said City, a tax equal to ten per cent. of the charge made by the seller of such electricity, which tax shall in every case be paid to the City by the seller not less often than monthly.

"Section 2. That each and every seller of electricity, in respect of sales of which a tax is hereby levied, shall keep complete records showing all sales of electricity in said City, which records shall show the price charged upon each sale, the date thereof and the date of payment thereof, and shall at all reasonable times be open for inspection by the duly authorized agents of said City, who shall have authority to make such transcripts thereof as they may desire.

"Section 3. That the tax hereby levied on sales of electricity shall apply to all sales of electricity, whether delivered through the medium of a meter or other measuring device, or otherwise, to premises located in the City of De-Land.

"Section 4. That in all cases where the seller of electricity collects the price thereof at monthly periods, the tax hereby levied shall be computed on the aggregate amount of sales to each consumer during such period, provided that the amount of tax to be paid to the City shall be the nearest whole cent to the amount computed.

"Section 5. That the tax hereby imposed shall apply to sales of electricity to the City of DeLand, whether for municipal street lighting, power, or otherwise, to the same extent as in the case of any other consumer of electricity.

"Section 6. That the tax hereby imposed shall be paid by the seller to the treasurer and collector of said City monthly in the manner following: on or before the 15th day of each month, the seller shall report in writing under oath, to the City Manager of said City of DeLand, an

itemized list of all consumers of electricity in the City of DeLand, giving in each instance the amount paid by each consumer of electricity in said City for the preceding month, together with all amounts paid for electricity used during the preceding months which were unpaid at the time of rendering previous reports, and said seller, at the respective times of rendering such monthly reports shall in such case pay to the treasurer and collector of said City the amount shown to be due the City by said report, and the treasurer and collector of said City shall issue receipt therefor.

"Section 7. That any seller of electricity, or any person, persons, firm or corporation, or any officer, agent or representative of any person, persons, firm or corporation, willfully failing or refusing to pay the tax hereby imposed, or violating any of the provisions of this ordinance, shall be subject to a fine of not more than One Hundred ($100.00) Dollars, or to imprisonment for not more than thirty days, or to both such fine and imprisonment, for each and every violation.

."Section 8. That if any section, portion or clause of this ordinance shall be held void, inoperative or unconstitutional, for any reason, such invalidity or unconstitutionality shall not affect or invalidate the remaining portions thereof.

"Section 9. That the tax hereby imposed is placed upon the seller, and shall in no case be passed on by the seller to the consumer or collected from the consumer, and no seller of electricity in the City of DeLand shall, at any time, increase the rates now being charged to consumers of electricity in the said City of DeLand.

"Section 10. That all ordinances and parts of ordinances in conflict with the provisions of this ordinance be and the same are hereby repealed.

"Section 11. That this ordinance is hereby declared to be an emergency measure and that the same shall take effect immediately upon its passage and approval by the Mayor.

"Section 12. That a copy of this ordinance shall be posted in two public places in the City of DeLand within ten days after the passage thereof."

The pertinent portion of the city charter of DeLand relied on to support the right to enact and to enforce the ordinance in question is Section 21 of Chapter 14466, Extra Session 1925, approved November 30, 1925. Said section provides in part as follows:

"That the City Commission shall within the limitations of this Act, have power by ordinance to levy and collect taxes upon all property, privileges and professions taxable by the laws for state purposes. * * *"

It is contended by the "power company" not only that the city has no charter power to levy and collect such a tax as the ordinance provides for, but that it is (1) arbitrary, unreasonable and confiscatory; (2) that it impairs the obligation of the city's lighting contract with the power company contrary to Section 10 of Article I of the U. S. Constitution; (3) that it violates Section 20 of Chapter 14466, *supra* (the city charter), which inhibits passage of utility rate regulatory ordinances as emergency measures; (4) that the levy of sales taxes by the city is not authorized by its charter; (5) that the ordinance is not a proper emergency measure; (6) that the tax imposed by it is not at a uniform and equal rate of taxation, as required by Sections 1 and 5 of Article IX of the Constitution of Florida; (7) that the ordinance deprives the power company of its property without due process of law in violation of the Fourteenth Amendment to the U. S. Constitution; (8) that said

ordinance constitutes double taxation and is therefore illegal and void.

The last stated objection, that is, that the tax imposed is illegal and void, because it constitutes double taxation, will be first disposed of by a specific decision of it in this opinion, since the question concerning it has been properly raised by the appellee and is so often asserted before this Court as if the premises involved in it were a sound proposition of constitutional law, which it is not, as the long list of authorities hereinafter cited will demonstrate.

The Federal Constitution does not afford protection against double taxation by the States. The Fourteenth Amendment no more forbids double taxation than it forbids doubling the amount of a tax, short of confiscation, if not infected with vices rendering the process of taxation unconstitutional on other grounds. Ft. Smith Lbr. Co. v. Arkansas, 251 U. S. 532, 40 Sup. Ct. Rep. 304, 64 L. Ed. 396; St. Louis S. W. R. Co. v. Arkansas, 235 U. S. 350, 35 Sup. Ct. Rep. 99, 59 L. Ed. 265; Swiss Oil Corp. v. Shanks, 273 U. S. 407, 47 Sup. Ct. Rep. 393, 71 L. Ed. 709; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 Sup. Ct. Rep. 230, 72 L. Ed. 551.

So unless the instant tax is to be held invalid on other grounds, the tax in controversy in this case will not be declared illegal under either the Federal or State Constitution, merely because it may justly be subject to criticism as a double taxing of the power company for its privilege of doing business in the City of DeLand.

But like all tax measures when called in question in the courts, the nature of the instant tax ordinance is to be determined by its practical operation and effect, rather than by what it is named. Thus, it must be tested by the character of its incidence upon the subject at which it is directed,

and by the manner in which it affects the taxpayer in its practical operation in the course of its administration, and in that view of it only, will the courts undertake to weigh and determine its validity in the light of the limitations of the State and National Constitutions. Spoliation under the guise of taxation always will be declared unconstitutional, whatever its name or form. Henderson Bridge Co. v. Henderson, 173 U. S. 592, 19 Sup. Ct. Rep. 553; 43 L. Ed. 823; Shaffer v. Carter, 252 U. S. 37, 40 Sup. Ct. Rep. 221, 64 L. Ed. 445; Child Labor Tax Case (Bailey v. Drexel Furniture Co.), 259 U. S. 20, 42 Sup. Ct. Rep. 449, 66 L. Ed. 817.

The city tax ordinance under attack in this case is shown by the proofs to have a definite practical operation and effect, and to possess the characteristics hereinbefore specified, as follows: (1) it is a tax confined to the power company as the sole seller of electricity in DeLand; (2) it is expressly forbidden to be passed on to the consumer as a tax upon the transaction of sale; (3) it is likewise forbidden to be taken into account in the rates allowed to be made to the public by the power company, thereby necessitating its payment out of whatever the power company receives in gross revenue from its customers, whether by way of gain or loss on the gross sales made by the power company; (4) it constitutes a substantial burden on the net revenues of the power company against which it is denied in advance any possibility of adjustment by way of a computation of some part, or all, of the tax as an expense of operation of the power company; (5) it constitutes a direct and immediate burden upon each transaction of sale of electricity by the company in proportion to its magnitude and irrespective of whether the transactions singly, or *en grosse,* are profitable or otherwise; (6) it arises against the

power company whether or not its profits are large or small and irrespective of whether any gain at all is realized by the power company over and above expenses and losses; (7) it is more than a reasonable statutory *corporate* net income tax, which under Section 11 of Article IX of the State Constitution may, or may not, be prohibited as to corporations, in that it may conceivably take all of the producer's net income and leave him no residue whatsoever.

The difference in effect between a tax measured by gross receipts and one measured by net income is recognized in many decisions. It is manifest and substantial. Moreover, it affords a convenient and workable basis of a distinction between a direct burden upon the business affected and a charge that is only indirect and incidental.

A tax upon gross receipts, or gross income from all transactions of a business corporation, for the privilege of doing the business in which the taxed gross receipts or income are realized, affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it is often sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or entirely discourage the conduct of the business affected. Thus it is materially variant from a tax upon net profits which has no such effect. United States Glue Co. v. Oak Creek, 247 U. S. 321, 38 Sup. Ct. Rep. 499, 62 L. Ed. 1135; Stewart Dry Goods Co. v. Lewis, 55 Sup. Ct. Rep. 525, 79 L. Ed. ___ (decided March 11, 1935).

It is generally conceded as a matter of common knowledge that the gross sales of a salable commodity or service do not bear any constant relation to the net profits of the seller and that gross receipts yield differing ratios of profit dependent upon the character of what is sold as well as the

volume of transactions. Stewart Dry Goods Co. v. Lewis, *supra*.

Every taxing ordinance or State statute imposing an excise must pass the constitutional tests applied by the courts to the method of imposition. While the measure of an excise tax impost rests almost entirely within the discretion of a State Legislature when such impost is determined directly by the State statute, the rule is more restrictive in the case of city ordinances. In the case of city ordinances, the measure of the tax impost, while primarily within the discretion of the municipal taxing authority to prescribe, yet like all other municipal ordinances, a municipal taxing ordinance is open to review in the courts for reasonableness as well as legality, particularly when passed solely under the guise of a revenue measure and not as a repressive use of the police power against an evil practice capable of being more directly suppressed by a prohibitive tax than by direct prohibition. Compare: Rast v. Van Deman & L. Co., 240 U. S. 342, 36 Sup. Ct. Rep. 370, 60 L. Ed. 679.

As has been hereinbefore pointed out, the nature of a tax must be determined by its operation rather than by particular descriptive language applied to it. And the power to tax must be given a practical construction which will not unduly restrict the governmental taxing power. Educational Films Corp. v. Ward, 282 U. S. 379, 51 Sup. Ct. Rep. 170, 75 L. Ed. 400.

An excise tax is a tax upon the manufacture, sale or consumption of commodities (most frequently upon the retail sale) within the State, or upon the license to pursue certain occupations or upon corporate privileges. Baldwin's Century Edition of Bouvier's Law Dictionary, page 377. The difference between an *ad valorem* property tax and an ex-

cise or occupation tax is principally in the fact that one is direct and the other is indirect.

All taxes, other than polls, are either direct or indirect property taxes. A direct tax is one that is imposed directly upon property, according to its value. It is generally spoken of as a property tax or an *ad valorem* tax. An indirect tax is a tax upon some right or privilege, or corporate franchise, and is most often called an excise or occupational tax.

An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted for laying them and fixing their amounts. If a tax is imposed directly by the Legislature without assessment, and its sum is measured by the amount of business done, income previously received, or by the extent to which a taxable privilege may have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of such taxpayer's assets or his investments in business, it is to be regarded as an excise tax. But if the tax is computed upon the valuation of the property, and assessed by assessors, either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax. Foster v. Graham, 154 Tenn. 412, 285 S. W. Rep. 570, 47 A. L. R. 971.

This Court is committed to the doctrine that the privilege of selling, buying, using or distributing for use, electricity, gas and like public utility services is a proper object of taxation in the form of an excise tax on the privilege so enjoyed computed according to any reasonable or lawful method of ascertainment. City of Lakeland v. Amos, 106 Fla. 873, 143 Sou. Rep. 744; Heriot v. City of Pensacola,

108 Fla. 480, 146 Sou. Rep. 654; Jacksonville Gas Co. v. Lee, Comptroller, 110 Fla. 61, 148 Sou. Rep. 188.

There is a logical and practical distinction, however, between a tax laid directly upon the gross receipts or gross income of a business to be assessed and collected upon the gross receipts or gross income already collected, because it has been so collected, and a tax on gross receipts or gross income which can in no case have any incidence unless the taxpayer seeks to enjoy, or enjoys, a privilege which is the proper object of excise taxation on such privilege, and which would not be open to judicial interference if its amount were arrived at by any other non-discriminatory method of computation than according to the measure of gross receipts or gross income enjoyed or realized on the privilege during a preceding period of time.

Since a tax must be determined by its practical effect and operation, rather than by particular descriptive language applied to it, a tax that can be levied only where an individual, firm or corporation both seeks, or exercises, a taxable privilege of doing business in one year and has been in receipt of profits, income or gross receipts during its preceding fiscal year which is made the basis of computation of the tax on the privilege proposed to be renewed and continued for another year, such tax is obviously not a direct tax on the income or receipts of such person, firm or corporation, but is to be construed as an excise tax on the privilege exercised or proposed to be exercised computed on the basis of past receipts or income and paid in advance for the next succeeding year computed for the current tax period on the basis of the person, firm, or corporation's receipts or income for its preceding fiscal year. Educational Films Corp. v. Ward, 282 U. S. 379, 51 Sup. Ct. Rep. 170, 75 L. Ed. 400. Thus it is not a direct tax upon the gross

receipts or gross income realized in a given year collectible upon a report and ascertainment thereof, but is a tax for the privilege of doing business in one year measured by the gross receipts or income accruing from the business in the preceding fiscal year. Bass, Ratcliff & Gretton v. State Tax Commission, 266 U. S. 271, 45 Sup. Ct. Rep. 82, 69 L. Ed. 282.

Applying to the ordinance involved in the present case the legal tests hereinbefore discussed, and so doing in order to truly determine the nature of the tax here brought in controversy, it must be held that the tax so attempted to be imposed upon the appellee power company by the appellant city, is nothing more nor less, in its final analysis, than a direct tax levied by the city upon the power company's gross sales income, regardless of whether such gross sales income represents a profit or a loss to the corporation for the period for which the tax is imposed and collected, and regardless, also, of the value of the special privilege or franchise held, exercised or enjoyed by the power company in the city for such fiscal period as the tax is made to cover.

We arrive at the foregoing conclusion because the tax here brought in controversy is expressly forbidden by the ordinance to be either passed on to the consumer or distributee of the electrical energy sold or paid for, or to be allowed for in the rates or charges permitted to be collected by the power company in connection with its transactions of sale upon which the tax is sought to be collected. Nor is the power company permitted by the terms of the ordinance to avoid the incidence of the tax by refusing to exercise, or abnegating in advance the privilege that the ordinance seeks to tax, namely, the special privilege or franchise of making sales and distributions of electrical energy in the City of DeLand.

Thus the practical operation and effect of the challenged ordinance is to reach into the power company's revenues, and diminish by ten per cent. the power company's gross receipts, after they have already accrued, and then solely on the basis of the accrual thereof, regardless of whether there has been a profit realized or loss suffered, by such power company on the gross transactions involved in the tax base.

The restrictive features of the tax here considered make it wholly unlike the tax sustained by this Court in City of Lakeland v. Amos, 106 Fla. 873, *supra.** In this case the necessary incidence of the tax is ultimately against the net profits or capital, or both, of the power company which is directly prohibited by Section 9 of the ordinance, from taking any course of action to avoid what may, in particular years, amount to a requirement that it render public utility service to its customers at an actual net loss on its whole DeLand business.

Whatever may be the powers of the Legislature under Section 11 of Article IX of the Constitution to impose, or authorize the imposition of, direct gross income taxes on *corporations,* insofar as such corporate taxation can be distinguished from the constitutionally prohibited tax upon the income of "residents" or "citizens" of this State (a point not necessary to be now decided), it is certain that such a direct gross income or gross revenue tax is special and extraordinary in its character and that it is not within the scope of the commonplace charter powers of taxation ordinarily conferred on a municipal corporation to levy and

---

*Upholding Chapter 15658, Acts of 1931, as imposing a special privilege tax in the form of a gross receipts tax levied against the privilege of making electricity and gas sales, etc. See Section 9 of the ordinance for such restrictive features.

collect taxes. Nor is it clearly within a special charter power to levy and collect taxes upon all property, privileges and professions capable of being taxed for State purposes, as that phrase is used by way of a general description of the special taxing power intended to be delegated by the Legislature to the municipality of DeLand under Section 21, 99, 102 and 119 of its charter (Chapter 14466, Special Acts, 1925).

There is no State law imposing upon power companies a direct gross revenue or gross income tax of the kind here dealt with. So by the terms of Section 21 of the city charter of. DeLand, and the special ordinance itself, the tax attempted to be imposed and collected as involved in this case, in manner and form as provided for in the challenged ordinance (having particular regard to Section 9 of the Ordinance), is beyond the charter powers of the City of DeLand and is therefore void and uncollectible.

What controls the judgments of the courts in matters like the present, is the underlying *reality* of the tax ordinance as it is intended to be put into practical operation and effect. Each and every of the divers and co-related sections of the ordinance here under attack must be viewed *in combination* with the *cumulative* significance that each separate provision imparts to the tax scheme outlined, *considered as a whole*. If when so viewed, an unauthorized result is perceived, such result will be thwarted by judicial intervention, notwithstanding one or more single features, if required to be dealt with alone, might be held valid.

We deem it of importance to state that since the present case was instituted as an attack upon both the *reasonableness* as well as the validity of a municipal ordinance, rather than as an attack upon the constitutionality of a State statute, we have not undertaken to. apply to the consideration of

the ordinance involved, the rule ofttimes applied to statutes, of rejecting illegal but separable provisions thereof, where by so doing the effectiveness of valid portions can be thereby saved and enforced under a declaration by the Legislature that such is the intent of the lawmakers when the Court so finds.

The foregoing is so, because an ordinance unreasonable as well as invalid on its face, may be properly adjudged so in its entirety, without the Court's being called on to practically reframe the ordinance by deleting the invalid portions thereof, and thereupon undertaking to enforce the remainder as valid in cases like this where it appears that, notwithstanding a clause set forth in the ordinance purporting to save any valid portions of it in the event other parts of it are found by the Court to be invalid, the task of redrafting and readopting the ordinance in proper form so as to make it legal and reasonable, can better be accomplished through the medium of the legislative authority of the city, without undue delay. This is particularly true in cases where the exercise of the legislative authority of a municipality is not limited to being done only at limited and long separated seasons, such as is the case where a law made by the Legislature itself is involved.

It is likewise pertinent to conclude this opinion by saying that in view of the conclusions reached and expressed in this opinion, we have found no occasion to review, or express an opinion on, either the weight or legal effect of the evidence adduced to show valuations and rate bases on behalf of the power company, or *contra* to its contentions on that subject.

The ordinance here is within the rule of invalid result and therefore cannot be sustained. Hence the perpetual

injunction against its enforcement was properly granted and the final decree so deciding must be and hereby affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.