BENTLEY-GRAY DRY GOODS COMPANY, *et al.*, v. CITY OF TAMPA.

188 So. 758
Division A.
Opinion Filed May 12, 1939.

*McKay, Macfarlane, Jackson & Ramsey,* for Appellants;

*Alonzo M. McMullen* and *Ralph A. Marsicano,* for Appellee.

BUFORD, J.—The appeal brings for review a final decree, as follows:

"The above cause coming on to be heard upon final hearing and the Court having heard the testimony introduced by the parties to this cause, and having heard argument of counsel for the respective parties, and being otherwise fully advised in the premises, the Court finds that the Plaintiffs and Intervenors have failed to sustain the allegations of the bill of complaint and of the various petitions for intervention, whereupon

"It Is Ordered, Adjudged and Decreed:

"(a) That the order entered by this Court on the 15th day of April, A. D. 1938, granting to Plaintiffs and Intervenors an Injunction *pendente lite,* and the order entered in this cause on the 22nd day of April, A. D. 1938, specially granting an injunction *pendente lite* to the intervenors J. H. Taylor and P. E. Leak, a co-partnership doing business under the style of and firm name of 'Flagler & Company' and 'Davis-Warner Company,' R. D. Ison and James Ison, a co-partnership doing business under the style of and firm name of 'Walker & Company' and C. E. Jarvis and W. L. Van Dyke, a co-partnership doing business under the style of and firm name of 'Mansfield & Harrington,' be and the same are hereby vacated and dissolved.

"(b) That the bill of complaint be and the same is hereby dismissed with prejudice as to all parties plaintiff thereto, whether original plaintiffs or subsequent intervenors.

"(c) That the Clerk of the above styled Court be and he is hereby directed to pay over to the defendant, City of Tampa, forty-five days from the date of this decree, the various sums of money deposited in the registry of this Court by the Plaintiffs and Intervenors in this cause, and

at such time to deliver to the defendant, City of Tampa, all returns or reports filed with the Clerk coincident with the deposit of such monies.

"(d) That the Clerk of the above styled Court be and he is hereby directed to deliver to the defendant, City of Tampa, forty-five days from the date of this decree, all reports and returns showing basis for computation of license taxes and filed with or attached to the injunction bonds where injunction bonds have been filed by any of the Plaintiffs or Intervenors in this cause.

"(e) The Court further finds that under the evidence in this cause none of the parties plaintiff or subsequent intervenors have shown themselves to be engaged in interstate commerce.

"It Is Therefore, Ordered, Adjudged and Decreed that Ordinance No. 651-A of the City of Tampa does not impose or seek to impose a tax upon interstate commerce or interstate transactions, and is therefore not invalid upon this ground.

"(f) The Court further finds that under the evidence in this cause it appears that certain of the plaintiffs (Harmon & Hulsey, and others), are engaged in foreign commerce and that such transactions in foreign commerce should not be included in the business or avails of such Plaintiffs upon which the license tax imposed by ordinance No. 651-A is based, but that such transactions are readily severable from the balance of their business.

"It Is Therefore Ordered, Adjudged and Decreed That as to such Plaintiffs the license tax imposed by said ordinance should be measured by the business or avails of such Plaintiffs respectively after excluding therefrom the business and avails of such Plaintiffs involved in or accruing from any foreign business or imports. So construed the ordinance is valid."

Appellants have posed six (6) questions for our consideration, as follows:

"1. *Quare:* Did the City of Tampa have the power under its charter to levy a license tax upon wholesale merchants doing business within said City, based. upon the.r gross sales in the face of the provision appearing in Chapter 18011, Acts of 1937, (1937 License Law) lim.ting incorporated cities and towns to the imposition of a license tax of the same kind as that prescribed by the Act, namely, a tax based upon the value of stock of merchandise carried by such wholesale merchants?"

"2. *Quare:* Did the City of Tampa have the authority under its charter, having already levied a license tax upon wholesale merchants, to levy a second, extra and additional license tax upon such wohlesale merchants, based upon the.r gross sales?"

"3. *Quare:* Did the City of Tampa have the authority under its charter to impose a license tax upon wholesale merchants based upon their gross sales including gross sales of merchandise made by such wholesale merchants outside of the corporate limits of the city to persons residing and having a place of business outside of the corporate limits of the City, where the only transactions with reference to such sales took place in the City, were making out of bills, the receipt of the consideration for the merchandise sold, and the making of the necessary book entries to reflect the transaction?"

"4. *Quare:* Were the plaintiffs, or most of them, engaged in Interstate Commerce and did Ordinance 651-A of the City of Tampa, which imposed a license tax upon wholesale merchants based upon their entire gross sales, impose a tax upon Interstate Commerce in violation of the Federal Constitution?"

"5. *Quare:* Was the tax imposed upon wholesale merchants by Ordinance 651-A imposing a license tax upon such wholesale merchants based upon their gross sales, arbitrary, unreasonable and discriminatory under all of the circumstances disclosed by the record in this case?"

"6. *Quare:* Was the Court warranted, in view of the evidence submitted and the questions of Law presented, in entering a Final Decree dissolving the temporary injunction and dismissing the Original and Amended Bills of Complaint?"

The first, second, third and sixth questions were answered by the Chancellor in the affirmative, while the fourth, and fifth questions were answered in the negative.

The suit was one seeking injunction against the City of Tampa restraining the enforcement of a license tax ordinance known as Ordinance No. 651-A.

The Ordinance fixes license taxes for a period of one year. Some of the pertinent features of the ordinance are: The Ordinance contains a schedule of various occupations and the license tax applicable to each and appended to this schedule is a provision to the effect that existing license ordinances are not repealed, but that the license tax imposed by Ordinance 651-A "shall be deemed as cumulative to any license taxes otherwise imposed" unless the contrary plainly appears.

Section 2 of the Ordinance sets out certain definitions, among which are:

"*Wholesale merchant* shall mean any merchant who sells to another for the purpose of re-sale."

"*Sale* shall mean the transfer of ownership, title or possession, transfer, exchange or barter, whether conditional or otherwise for a consideration."

"*Gross Sales* shall mean the gross sales' price at which

all sales were made, whether for cash, on time or for credit and shall not contemplate any deductions for any purpose not specifically provided for herein, and shall mean all sales regardless of the ultimate distribution, place of delivery, or purpose of use, of such merchandise."

Section 3 of the Ordinance contains the following provision:

"Where it is required in this Ordinance that a license tax be based on gross sales or on commissions, it shall be in addition to any license paid under any classifications contained in this or required under any other Ordinance and the gross sales or commissions as used for the determining of such license as required by this Ordinance shall be based on the gross sales of all merchandise sold whether classified licenses are also required or not."

The Ordinance authorizes inspection of "the place of business and records of the person required to pay a license" by the Tax Collector or his deputies to the extent necessary to verify any returns.

It requires the filing of returns showing the amount of gross sales within thirty days subsequent to October 1, 1937, makes the failure of any person subject to the terms of the Ordinance to comply therewith an offense, and each day of failure a separate offense, and imposes a penalty of five hundred dollars ($500.00) or imprisonment for sixty days for each offense.

As to wholesale merchants, the Ordinance provides:

"MERCHANTS—WHOLESALE. The license tax on every wholesale merchant shall be measured by the amount of gross sales made by such merchant and shall be figured and arrived at as follows:

Returns shall be made by each wholesale merchant to the City Tax Collector, showing amount of gross sales for

the 12-month period ending September 30, 1937, and on each $1,000.00 of gross sales made during the said 12-months period or as otherwise provided herein the license tax shall be * * * $ .60. The foregoing shall be in addition to any other license tax required by any subsection of this schedule or required by any other ordinance. Except that no license tax shall be collected hereafter from wholesale merchants based on the volume or value of the stock carried."

The Appellant contends:

"First: That a large part of the sales made by plaintiffs respectively during the twelve-month period ending September 30, 1937, were made outside of the corporate limits of the City of Tampa, by solicitation of customers, whose places of business were outside the City, through traveling representatives who called upon such places of business. The merchandise sold being subsequently delivered at such place of business, and that no part of such transaction took place within the corporate limits of the City of Tampa, except the loading of the merchandise from the wholesaler's place of business upon the conveyance, and the clerical work necessary to keep a record of the transaction and collection of the consideration.

"Second: That Chapter 18011 Acts of 1937 (The 1937 License Laws) limited the powers conferred by its charter upon the City of Tampa with reference to the imposition of licenses to the imposition of a license of the same kind and character specified in that Act, namely a license tax based upon the value of stocks, of merchandise carried by the wholesaler, and in effect prohibited the imposition of license taxes based upon gross sales.

"Third: That the City having levied a license tax by ordinance which stood unrepealed, had exhausted its power

in that regard, and was without authority to levy a second additional and extra license tax by Ordinance 651-A.

"Fourth: That a considerable part of plaintiff's business consisted of the sale of merchandise in Interstate and Foreign Commerce which was delivered directly to the vendee of the respective plaintiffs, either in the City of Tampa or outside of the City, in the original package and without ever having come to rest in the warehouses of the plaintiffs involved, within the City of Tampa, so that the tax imposed upon gross sales of the respective plaintiffs was in effect a tax upon an Interstate transaction and a burden upon Interstate Commerce.

"Fifth: That the tax imposed upon wholesale merchants as a class by Ordinance 651-A increased their tax burden from 100% to 800% in various instances, and was arbitrary and unreasonable, and imposed upon the plaintiffs, as a class, an unjust burden of taxation in proportion to the d stribution of the tax burden made by the City of Tampa upon its taxpayers, thereby taking the property of the plaintiffs equal protection of the laws, contrary to provisions of the State and Federal Constitutions.

"Sixth: That the passage of the ordinance as a revenue ordinance was a mere subterfuge, in that the yield from licenses had been grossly underestimated in the City's budget theretofore adopted with the intention of providing a substantial overage derived from the collection of license taxes which might and would be applied by the City of Tampa in discharg'ng its obligations illegally incurred and not set forth in such budget, to-wit: its contributions and commitments toward the cost of public improvement projects by the Federal Government under the program known as the Works Progress Administration, for which the Mayor and other city officials of the City of Tampa had made

commitments prior to September 30, 1937, to the extent of five hundred thousand dollars ($500,000.00)."

To this amended bill of complaint the City interposed a motion to strike and a motion to dismiss.

The motion to dismiss was denied and the motion to strike was granted in part, with the result that

"(a) That part of the Sixth paragraph of the Amended Bill, which raised the question of sales made outside the City, above referred to, was stricken.

"(b) The Eighth and Ninth paragraphs of the Amended bill raised the question of the City's right to impose a license tax of this kind and character in view of the provision of the 1937 license law above referred to, was stricken, and

"(c) The Tenth paragraph of the Amended Bill of Complaint which raised the question of the right of the City to impose an extra and additional tax was stricken, and those questions eliminated from further consideration.

"Thereafter, the defendant City, filed an answer to the Amended Bill of Complaint, which in legal effect denied all of the contentions made, which had not been previously eliminated by the motion to strike."

Reverting again to Ordinance No. 651-A, we note that Section 1, *inter alia,* provides:

"Nothing contained in this schedule shall be deemed as repealing any license required by or the provisions of any other ordinances, or amending same except where inconsistent herewith. Each classification and the amount thereof as set forth herein shall be deemed as cumulative to any license taxes otherwise imposed and when any occupation, business or profession shall fall into more than one of the classifications, such occupation, business or profession shall be required to comply with the license requirements of each such classification or provision."

Section 7 of the Ordinance provides:

"That each provision in this ordinance contained and each license tax by this ordinance imposed is intended to be separate and independent and said license taxes are intended to be construed distributively, and that if any section or any part of this section shall be held or declared unconstitutional or invalid it shall not affect any other section or part of a section not so specifically held or declared to be unconstitutional or invalid. And if this ordinance or any provisions hereof shall be held inapplicable to any person, group of persons, property, kind of property, circumstances, such holding shall not affect the applicability thereof to any other person, property or circumstances. All ordinances or parts of ordinances in conflict with any of the provisions of this ordinance, be, and the same are, hereby repealed."

The only license taxes sought to be enjoined were those provided or sanctioned by Ordinance No. 651-A.

As to the first question, it is noted that the power to levy licenses on professions, businesses and occupations is conferred on the City of Tampa by Section 1, Chapter 9095, Special Acts of 1921, which grants power, *inter alia,* "to license professions, businesses and occupations carried on within the corporate limits, and privileges and franchises exercised therein, and to levy and collect license taxes upon the same; provided, however, that the amounts of said license taxes and the subjects upon which they are levied shall be fixed by city ordinance, and shall not be dependent upon the general State law."

This power was recognized by this Court in the case of Lachman v. Walker, 52 Fla. 297, 4' Sou. 461, although the authority involved in that case was exercised under a previous charter. The contention that this power has been abridged by provisions of Chapter 18011, Acts of

1937, is not tenable because of the specific provisions of Sections 2 and 5 of that Act.

Section 2 of the Act, *inter alia,* provides: "Provided that incorporated cities and towns may impose such further license taxes of the same kind upon the same subjects as they may deem proper, except when otherwise provided by this Act or other law, but the license taxes so imposed shall not exceed fifty per cent of the State license tax, except as otherwise authorized by law."

And Section 5 of the Act, *inter alia,* provides: "Wholesalers and others who do not pay a license tax calculated wholly or in part on gross receipts from their sales and who keep a stock of merchandise for sale shall pay an additional tax of $1.50 for each thousand dollars of their stock of merchandise (other than petroleum products)." The words in Section 2, "except when otherwise provided by this Act or other law" recognize the continuing efficacy of the power granted to the City of Tampa under the 1921 Act, *supra.* See State, *ex rel.* Holloway, *et al.,* v. Keller, 133 Fla. 335, 182 Sou. 779.

It is contended that the opinion and judgment in American Bakeries Co. v. Haines City, 131 Fla. 790, 180 Sou. 524, should have the controlling influence in this case. We cannot agree with this contention because the basis for the opinion and judgment in that case was the provision in Section 5 of Chapter 18011 applying to vehicles used by any persons for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid has no application in this case.

The second question we find has no basis in the record because it is not shown that there is an attempt under the ordinance here under consideration to levy a second extra and additional license tax upon wholesale merchants. The

Amended bill alleges in Section 5 thereof, that a former ordinance which was in effect on September 28, 1937, was repealed by ordinance 651-A and in lieu thereof the provisions of the latter ordinance became effective. There is a provision in Section 1 of the ordinance to the effect that when any occupation, business or profession shall fall into more than one of the *classifications* then such occupation, business or profession should be required to comply with the license requirements of each classification but there is no showing whatever that it is the purpose of the ordinance to levy more than one tax upon any single classification.

It is well settled that in construing municipal ordinances the Court should strive to so construe them as to give reasonable effect to their provisions and where a municipal ordinance is capable of two constructions, one construction rendering the ordinance legal and the other illegal, the former will be adopted if possible. State, *ex rel.* Rand, v. Brogden, 84 Fla. 520, 94 Sou. 653.

Where one comes under more than one valid classification for the payment of excise tax, such as here in contemplation, he may be required to pay the tax in each classification in which he falls. See McKinnon's Specialized Service, Inc., v. City of Tampa, 128 Fla. 571, 176 Sou. 40. Also see Amos v. Gunn, 84 285, 94 Sou. 615; Klemm v. Davenport 100 Fla. 627, 129 Sou. 904.

Under the third question it is contended that the tax could not be lawfully based on merchandise sold and delivered outside the City of Tampa. The question as presented is hardly full enough. It appears to assume that when goods, wares and merchandise are sold beyond the limits of the City the keeping of the records of sales, making out bills, etc., constitute the only part of the transaction that takes place in the City of Tampa, but it is a

matter of common knowledge that when a wholesaler sells goods to a retailer he ships those goods from his warehouse or place of business, or has them shipped from some other place of business. The goods must first be conveyed to the warehouse over the public streets, or by other transportation facilities, must be stored and kept for sale and then delivered from the wholesale house to the retail house and it could make no material difference whether the retailer resides within or beyond the city limits. Transactions of this character do not constitute transactions in Interstate Commerce. The lower court held that transactions in Interstate Commerce should not be included in gross sales upon which the tax is required to be paid.

That transactions of this sort are transactions subject to taxation on the location of the wholesale house, is supported by opinion and judgment in Duffin v. Tucker, 113 Fla. 621, 153 Sou. 298.

The appellee cites the case of Sacramento v. California Stage Co., 12 Cal. 134. And a reading of the opinion in that case shows that it was rendered by a divided court and that in the dissenting opinion it was conceded, agreeing with the majority opinion, "that a wholesale grocer, for instance, might be subjected to an occupation tax by the City in which his place of business is located, although his sales might be to persons outside of the city and involve the shipment of the goods sold to points outside."

The license tax attempted to be imposed on a wholesaler doing business in a municipality is to be differentiated from a license tax attempted to be imposed upon a carrier as to goods carried beyond the city limits.

We find that by the great weight of authority in both State and Federal courts the tax here imposed is valid. See City of Sedalia v. Standard Oil Co., 66 Fed. (2) 757.

In City of Sedalia v. Shell Petroleum Corporation, 81

Fed. (2) 193, a different state of facts was involved and the difference was recognized in the latter Sedalia case. We have considered the cases cited by appellant in this regard and hold that the same are not controlling in the case at bar.

We think the fourth question is without merit because there is nothing in the ordinance to warrant the construction that the ordinance was intended to apply to transactions in Interstate Commerce and if such a construction had been placed on the ordinance by the lower court the decree of the Chancellor was such as to eliminate such transactions from the purview of the ordinance. A phase of this sort was dealt with in our opinion and judgment in the case of Blalock v. Powledge, 131 Fla. 498, 179 Sou. 772. In that case there was involved the validity of an ordinance under which the City of Tallahassee was enforcing license tax provisions against the local office of Montgomery Ward & Company, and we said:

"The separation of interstate and intrastate business is purely a matter of bookkeeping. It is not contended that the ordinance in question controls interstate business but applies exclusively to intrastate business transacted here." See also Lee v. Hector Supply Co., *et al.,* 133 Fla. 849, 183 Sou. 489.

The fifth question challenges the reasonableness of the tax imposed. It is noted that the tax is sixty cents per one thousand dollars of sales, but that is not based on current sales. It is based upon the sales actually made for the preceding year. In pursuing this method of determining the basis for the tax, the City followed what was approved by us in the case of City of DeLand v. Florida Public Service Co., 119 Fla. 804, 161 Sou. 735.

In the case of McKinnon's Specialized Service, Inc., v. City of Tampa, *supra,* we upheld a license tax imposed by

the City of Tampa on dealers in gasoline of one cent per gallon which was in addition to a flat license tax levied against each dealer in gasoline. This would figure about 5% on gross sales, while the tax levied on wholesalers here involved is 3/50 of one per cent.

In Heriot v. City of Pensacola, *et al.,* 108 Fla. 480, 146 Sou. 654, we sustained an ordinance of the City of Pensacola levying an excise tax of 4% on the purchase of utility service. In that case we said:

"The taxing authority has wide discretion in imposing license taxes, and unless there can be no substantial basis for discrimination and classification and in fixing the amount of license so that the discrimination must be regarded as purely arbitrary and unreasonable under every conceivable condition in practical affairs, the courts will not interfere."

The sixth question challenges the action of the Court in upholding the ordinance in view of the evidence submitted and the questions of law presented. We think the law and the evidence amply sustain the findings and decree of the Chancellor.

It is, therefore, affirmed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.