**RUFUS E. SMITH v. THE CITY OF MIAMI, a municipal corporation, and GEORGE N. SHAW, as Director of Finance of The City of Miami, a municipal corporation.**

34 So. (2nd) 544                               January Term, 1948
March 23, 1948                                         Division A
Rehearing denied April 10, 1948

*R. K. Bell,* for appellant.

*J. W. Watson, Jr., Franklin Parson, Keen, O'Kelley & Spitz, J. Velma Keen* and *Chas. H. Spitz,* for appellees.

SEBRING, J.:

Rufus E. Smith is a retail merchant in the City of Miami. He has brought this suit for a declaratory decree and seeks to have his rights defined under two certain ordinances of the City of Miami which attempt to levy and impose an excise tax on tobacco products sold within the corporate limits of the City.

In his bill of complaint the plaintiff alleges that he operates a drug store in the City of Miami for the retail sale of drugs and other merchandise including cigarettes and other tobacco products; that he holds an occupational license as issued for the separate classification of drug stores under

the Charter of the City of Miami which authorizes him to sell tobacco products at retail and that he also holds a State occupational license for the retail sale of such products. The plaintiff also alleges that the City of Miami· enacted Ordinance No. 3140, on July 25, 1946, imposing an excise tax on the retail sale of tobacco products, under which a tax amounting to one cent for each ten cents, or the fractional part thereof, of the retail price of tobacco products was imposed, to be paid by the "seller" of tobacco products, as defined in the ordinance. The plaintiff alleges, further, that thereafter, on October 2, 1946, the City amended its original tax ordinance by adopting Ordinance No. 3191, under the title of which the tax is to be paid by "every dealer in or seller of" tobacco products, in the alternative, but under the terms of the body of which the tax is required to be paid by "every dealer or other agent," as defined by the ordinance.

The plaintiff charges that the excise tax on tobacco products attempted to be imposed by Ordinance No. 3140 as amended by Ordinance No. 3191, nullifies his right under his occupational license privilege for which he has paid, and that the City of Miami lacked charter or statutory authority to impose the tax levied under the ordinances.

The answer of the City of Miami traverses the allegations of the bill of complaint under which it was contended that the ordinances were unenforceable and sets forth the provisions of the charter under which the City claimed to derive its power to enact the ordinances which the plaintiff sought to invalidate.

At final hearing based on the bill, answer, and a stipulation of the parties as to certain facts material to the controversy, the Circuit Court entered its final decree holding that the ordinances in question were valid. The plaintiff has taken an appeal from the decree of the chancellor.

Ordinance No. 3140 was adopted by the City of Miami on July 25, 1946. It amended chapter 52 of the City Code by adding thereto eleven new sections, numbered 41 to 51 inclusive. These eleven sections made provisions for the levy, imposition and collection of an excise tax upon the retail sale

of tobacco products in the municipality, to be paid by the "seller," defined by the ordinance to be any person "engaged in the business of selling tobacco products who transfers title or in whose place of business title to any of such products is transferred within the corporate limits for any purpose other than resale."

Subsequently, on October 2, 1946, the City adopted Ordinance No. 3191. This later ordinance amended section 41, 43, 44 and 47, but did not disturb section 42, chapter 52, brought into the code through the enactment of Ordinance 3140.

Section 41 of Chapter 52 of the Code, as now amended by Ordinance No. 3191, defines the various terms with which we are concerned on this appeal, as the same are used in sections 41 to 51 inclusive, as follows:

"(f) The words 'tobacco products' shall mean and include cigars, stogies, tobies, cigarettes, smoking tobacco, chewing tobacco, snuff, and any other product of the tobacco plant, prepared by drying and manufacturing processes, and used by human beings either for smoking, or for chewing, or as snuff, irrespective as to whether or not tobacco in any such product is flavored, adulterated or mixed with any other ingredient."

"(g) The word 'sale' shall mean and include every act or transaction irrespective of the method or means employed . . . whereby title to any tobacco product shall be transferred from the sellers . . . to any person within the corporation limits of the City . . . ;"

"(h) The word 'seller' shall mean and include every person engaged in the business of selling tobacco products who transfers title or in whose place of business title to any such products is transferred within the corporate limits of the City for any purpose other than resale;"

"(i) The word 'dealer' shall mean and include every manufacturer, jobber, wholesale dealer or other person who supplies a seller with tobacco products;"

"(j) The word 'agent' shall mean and include every dealer and other person who shall be authorized by the Director of Finance to purchase and affix stamps to tobacco products, under the provisions of Section 43 of this Chapter;"

"(k) The word 'purchaser' shall mean and include every person to whom the title to any tobacco product is transferred by a seller within the corporate limits of the City;"

Section 42 of Chapter 52, which was enacted into the Code by Ordinance No. 3040 and which, as we have said, was not amended by Ordinance No. 3191, provides: "That, in addition to all other taxes of every kind now imposed by law . . . there is hereby levied and imposed by the City upon each and every sale of any tobacco product . . . an excise tax, the amount whereof, to be paid by the seller in the manner hereinafter prescribed, shall be one cent (1c) for each ten cents (10c) or fractional part thereof, of the retail price at which any such tobacco product is sold, exclusive of such excise tax."

Section 43 of Chapter 52 of the Code, as now amended by Ordinance No. 3191, prescribes that "the excise tax imposed . . . shall be paid by every dealer or other agent by affixing a stamp or stamps, or causing a stamp or stamps to be affixed, to each and every package of tobacco products in the manner and at the time hereinafter stated. Every dealer in the City shall have the right to buy and affix such stamps as an agent, and the Director of Finance may appoint, in addition to dealers, such other persons as agents for the purpose of buying and affixing stamps as he may deem necessary; provided, however, that a seller shall not be entitled to be appointed as an agent."

Section 44 of Chapter 52 of the Code, as now amended by Ordinance No. 3191, provides for the mandatory purchase of the stamps by dealers and the affixture of such stamps to each package of tobacco products prior to their delivery to the seller. It requires every seller to examine all packaged tobacco products prior to exposing them for sale and to ascertain that the proper excise stamps have been affixed. It provides that if upon such examination unstamped or improperly stamped packages are discovered the seller shall notify the dealer of the fact, who, in turn, shall either affix the required stamps or replace the packages properly stamped. It provides, also, that if a seller obtains or acquires possession of unstamped or improperly stamped packages from persons other than a dealer, he shall notify the Director of Finance of

the fact, and the Director shall thereupon designate an agent to affix the stamps, the purchase thereof to be with funds advanced to the agent by the seller.

Section 47 of Chapter 52 of the Code, as now amended by Ordinance No. 3191, defines the violations of the Act, and makes it a violation for any person to perform, or fail to perform, any act for the purpose of evading the payment of the tax, or for any dealer or seller to fail or refuse to perform any of the duties imposed on him under the provisions of section 44 of the chapter.

As the first question raised on the appeal the appellant poses the following: Does the City of Miami have charter power to levy both an occupational tax for regulatory purposes and occupational tax for revenue purposes as a precedent to or for the privilege of selling tobacco products at retail or wholesale?

Section 5 of Article IX of the Constitution of Florida provides that: "The Legislature shall authorize the . . . incorporated cities or towns in the State to assess and impose taxes for . . . municipal purposes . . . "  In pursuance of this provision of the Constitution the legislature has enacted section 167.43 Florida Statutes, 1941, which provides that "The City or Town Council may raise . . . by license on professions, business and occupations carried on within the corporation, all sums of money which may be required for the improvement and good government of the city, and for carrying out the powers and duties herein granted and imposed; and enforce the receipt and collection of the same in the manner now provided by the laws of the state for the assessment and collection of state taxes and licenses."

The legislature has also placed in the Charter Act of the City of Miami the following provisions:

"See. 3. The City of Miami shall have power:

(a) To raise annually by taxes and assessments in said city, such sums of money as the commission . . . shall deem necessary for the purpose of said City, and in such manner as shall be hereinafter provided for, and in accordance with the constitution and laws of the State of Florida and the United States; . . . "

"(bb) To license *and tax* privileges, business, occupations and professions carried on and engaged in within the city limits, and the amount of such licenses *and the amount of such license taxes* shall not be dependent upon a general state revenue law."

"Sec. 49. In providing for licensing and regulating persons, corporations and associations engaged in business, occupations, professions and trades the commission may by ordinance classify businesses and arrange the various businesses, occupations, trades and professions carried on in the City into such classes as may be just and proper and fix by ordinance the license fee payable by each, *without regard to the State law fixing such fees.*"

"Sec. 84. All general laws of the State, applicable to municipal corporations, heretofore, or hereafter enacted and which are not in conflict with the provisions of this charter or with the ordinances or resolutions hereafter enacted by the commission pursuant to authority conferred by this charter, shall be applicable to said city; provided, however, that nothing contained in this charter shall be construed *as limiting the power of the commission to enact any ordinance or resolution not in conflict with the constitution of the state or* with the express provisions of this charter."

"Sec. 109. The enumeration of particular powers in this charter shall not be deemed or held to be exclusive, but in addition to the powers enumerated herein, implied thereby, or appropriate to the exercise thereof, the said City shall have and may exercise all other powers which are now, or may hereafter be, possessed or enjoyed by cities under the Constitution and general laws of this State, and all the powers of the City, whether expressed or implied, shall be exercised and embraced in the manner prescribed in this charter, or when not so prescribed, then in such manner as may be provided by ordinance or resolution of the Commission. (italics supplied) See chapter 10847, Laws of Florida, 1925.

Under the provisions we have quoted, it is our view that ample power is given the City to impose license taxes on privileges, businesses, professions or occupations exercised or carried on within the municipality, for the purpose of raising

revenue as well as for the purpose of regulation. Section 167.43, supra, specifically authorizes the cities and towns of the state to raise money required for improvement and good government, through licenses on professions, businesses and occupations. Section 3(bb) of its Charter Act empowers the City of Miami not only to license but also *to tax* privileges, businesses, occupations, and professions within the municipality, and provides that the amount of the licenses and *the amount of the license tax* shall not be dependent upon a general state revenue law. Under these provisions it seems entirely plain that the legislature intended that the city should have the power to resort to licensing for revenue purposes as well as for regulation, for otherwise it would not have given the city the power "to tax" as well as to license such activities. As stated in Lachman v. Walker, 52 Fla. 297, 42, So. 461, which involved the construction of charter provisions very similar to the ones now under consideration: "To hold that the power granted is a power to license merely, with no revenue feature would be to ignore entirely the rest of the sentence wherein the term 'license' is clearly shown to involve the broader idea of a 'license tax,' which is further emphasized by special and added power given to this municipality over others that the amount of such tax shall not be dependent upon the general state revenue law."

The next question posed by the appellant in his brief is this: Where the taxing authority of a City is limited to the levy of an occupational license tax as a condition precedent to engaging in business, do not two levies, one for regulatory purposes and the other for revenue purposes, result in the breaking down of the single taxing privilege into its constituent elements and amount to double taxation?

The question is bottomed upon the mistaken assumption that the City of Miami is limited by its charter, and the general statutes pertaining to municipalities, solely to the imposition of a license fee as a condition precedent to engaging in business, but such is not the case. As the contention that the tax imposed by the ordinance results in the breaking down of the single taxing privilege into its constituent elements, thus amounting to a double taxation, we are unable to

follow the argument of counsel. Subsection of section 41 of the ordinance, which defines "tobacco products," includes within its definition all products of the tobacco plant used by human beings for smoking, chewing, or for snuff. The ordinance, therefore, is based on the whole of a general classification of a taxable item rather than on the individual items constituting the general classification.

The appellant has failed to point out in his briefs how, or in what manner, the tax imposed constitutes double taxation. The mere fact that the business of the plaintiff may be taxed under two or more different classifications will not thereby invalidate the tax on such business, either on the ground of double taxation or any other ground. Such, in effect, was the holding of the chancellor who fully considered and properly answered the contentions made, we think, in the following appropriate language:

"In the first place, the express authority granted to the City by its charter is not limited to imposing such a license fee. The authority under Section 3 (bb) is 'to license *and tax* privileges, business, occupations and professions carried on and engaged in within the City limits . . . '

"Moreover, this tax does not represent an effort to place a separate excise on an incident of a business. This tax is an excise levied on persons who conduct a business properly given separate classification for the purpose. The fact that the amount of the tax is measured by the quantity of the merchandise handled, and the fact that its rate is based on a retail price prevailing for the product, and administrative features, which do not serve to take the tax out of the category of an excise tax on business engaged in within the City limits, for the imposition of which authority is given expressly by the Charter. It adds up to the same thing, whether you call it an excise tax on the business engaged in, or an excise tax of engaging in the business. . . ."

"Paragraph 6 presents several questions. It is contended there that payment of a retail dealers' license tax under the plaintiffs' business classification of a druggist (which includes authority for dealing in tobacco products), precludes the imposition of this additional excise on the sale of such products;

that classification of dealers or sellers of tobacco products for such an additional tax is unreasonable and discriminatory; and that the holding of a state occupational license for sale of such products precludes the additional tax in question.

"Section 49 of the City charter gives express power for the classification of businesses for the purpose of occupational taxes. There is ample authority for separate classification of persons in the business of selling tobacco products for the purpose of imposing an excise tax thereon, and also for the purpose of regulation of such business event to the point of excluding the sale of such products entirely. Classifying such business separately for an excise tax is not unreasonable or discriminatory.

"Having the authority to levy an excise tax on such business the City is not limited to the initial license charge. There is no restriction in the law as to the amount of license or occupational excise tax which can be thus imposed. Section 3(bb) of the charter expressly provides that the amount of such excise taxes shall not be dependent upon a general state revenue law.

"There is no showing here that the amount of the tax is such as to constitute confiscation. Just as the amount of the tax could be enlarged in a single tax, the total desired could be reached by separate imposts relating to the classified business. There is nothing improper in having one tax or portion of the tax represented by flat fee, as in this case, and an additional excise on persons conducting the same business on a graded scale depending on the volume of sales made in the business. All dealers or sellers of these products on whom the tax is imposed are treated alike so that there is no denial of equal protection of the laws. The claim of double taxation, in this same situation, has been rejected when it has arisen in other States. The existence of a State excise on such business does not preclude imposition of an excise tax by the City. In fact the State laws make provision therefor."

See also State ex rel. Goodwin v. Milburn, 118 Fla. 211, 158 So. 884; Bentley-Gray Dry Goods Co. v. City of Tampa, 137 Fla. 641, 188 So. 758; Amos v. Gunn, 84 Fla. 285, 94 So. 615; Klemm v. Davenport, 100 Fla. 627, 129 So. 904.

The appellant states as his final question the following: Where a tax is levied against the retailer or the wholesaler, in the alternative, with the result that the one escapes the tax if the other pays it, and where the levy further provides that the wholesaler must purchase stamps as evidence of payment of the tax and affix the stamps to the product before it can be sold to the retailer, does not such a levy in effect coerce the retailer to make his purchases from the local wholesaler, and unlawfully channel trade through the wholesaler, and further tend to create a monopoly?

We are unable to understand how it can be said that the tax tends to create a monopoly, or how, by reason of its imposition, the retailer is coerced into making his purchases from a local wholesaler. The tax under the ordinance is levied equally on all tobacco products, whether purchased by the seller from without the municipality or furnished to him by a local dealer. When tobacco products are brought in from outside the municipality, the seller is held responsible for seeing that the stamps are properly affixed to the packages after such articles have been received here and have been delivered out of the flow of inter-state commerce. When the products are purchased from the local dealer, the seller is forbidden from offering them for sale unless they bear the package stamp required by the ordinance. In either event the responsibility for selling only stamped packages rests upon the seller.

The appellant also submits the contention that under our ruling in City of Miami v. Kayfetz, (Fla.) 30 So. (2nd) 521, the ordinance may not be upheld as valid. We are unable to find anything that was said in that case pertinent to the issues then before the court that is at variance with the views which we have expressed in this decision.

The decree appealed from should be affirmed, and it is so ordered.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.