261 So.2d 1 (1972)
CITY OF TAMPA, a Municipal Corporation, and Logan D. Browning, As Comptroller of the City of Tampa, Petitioners,
v.
BIRDSONG MOTORS, INC., et al., Respondents.
No. 39871.
Supreme Court of Florida.
March 10, 1972.
*2 William Reece Smith, Jr., City Atty., for petitioners.
Chas. S. Ausley, of Ausley, Ausley, McMullen, McGehee & Carothers, Tallahassee and Sam Bucklew, of Bucklew, Ramsey & Stichter, Tampa, for respondents.
Robert M. Ervin, Joseph C. Jacobs and Thomas M. Ervin, Jr. of Ervin, Pennington, Varn & Jacobs, Tallahassee, for The Grand Union Co., amicus curiae.
Ralph A. Marsicano, Tampa, General Counsel for Florida League of Municipalities, amicus curiae.

ON REHEARING GRANTED
ROBERTS, Chief Justice.
Petitioners seek review of a decision of the Second District Court of Appeal, Birdsong Motors, Inc. v. City of Tampa, 235 So.2d 318. Conflict is alleged with Smith v. City of Miami, 160 Fla. 306, 34 So.2d 544 (1948), and Southern Bell Tel. & Tel. Co. v. Town of Surfside, 186 So.2d 777 (Fla., 1966). We have jurisdiction pursuant to Fla. Const. Art. V, § 4(2), F.S.A.
Certain automobile dealers, engaged in the business of selling motor vehicles as retail merchants in the City of Tampa, filed their complaint against the City of Tampa and its Comptroller to enjoin the enforcement and collection of a tax levied by the City of Tampa and to enjoin the defendants from inspecting the books and records of the dealers relating to the amount of tax due and owing. Respondents attacked the validity of a tax, originally enacted by the City in 1954 as Ordinance No. 1708-A (now compiled code § 21-50) as follows:
"Sec. 21-50. Tax levied; payment required; amounts to be paid.
"A license tax is hereby levied upon and shall be collected from every person, firm or corporation exercising the privileges or carrying on or engaging in the businesses, professions, or occupations hereinafter specifically enumerated, as fixed hereinafter; each such amounts, unless otherwise specifically stated, being the amount payable as a license tax for exercising such privilege or carrying on or engaging in such business, profession, or occupation mentioned for each, and it shall be unlawful for any person, firm, or corporation, to carry on or engage in any business, occupation or profession herein prescribed and designated without *3 having first paid the license tax as provided herein or complied with the terms hereof, as follows:
......
"(b) License tax based on gross sales  retail and merchants. The license tax on every retail merchant, whether any other license tax is required by any subsection of this section or not, shall be measured by the amount of gross sales made by such merchant and shall be figured and arrived at as follows: Returns shall be made to the city treasurer showing amount of gross sales for the twelve months period ending July 31st, immediately preceding the license year, which returns shall be filed with the city treasurer not later than thirty days after said July 31st, and on the first three thousand dollars or less the license tax shall be ........ 10.00. On each one thousand dollars of gross sales or major fraction thereof above three thousand dollars ....... 1.00."
Taxation by a city must be expressly authorized by either the constitution or grant of the Legislature, and any doubts as to the powers sought to be exercised must be resolved against the municipality and in favor of the general public. Certain Lots, Etc. v. Town of Monticello, 159 Fla. 134, 31 So.2d 905 (1947). Statutes authorizing a municipality to tax are to be strictly construed, are not to be extended by implication, and are not to be enlarged so as to include any matter not specifically included, even though said matter may be closely analogous to that included. City of Miami v. Kayfetz, 158 Fla. 758, 30 So.2d 521 (1947).
Prior to adoption of the Florida Constitution of 1968, the authority of a city to impose taxes could be enacted by special or local act (as in its Charter which is approved as a special law). Smith v. City of Miami, supra. Under the Constitution of Florida adopted in 1968, this authorization for a city to tax must hereafter "be authorized by general law," except in the case of ad valorem taxes.
Fla. Const. Art. VII, § 1 (1968) provides in part as follows:
"(a) No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the state except as provided by general law." (emphasis ours).
Fla. Const. Art. VII, § 9 (1968), similarly limits the taxing authority of municipalities:
"(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution." (emphasis ours).
After carefully reconsidering the briefs and the record, we conclude that the decision of the Second District Court of Appeal is correct.
From the foregoing provisions of the Florida Constitution it is clear that, except for ad valorem taxes, municipalities may be granted the power to levy any tax only by general law. Thus, the question presented is whether the tax imposed by the City of Tampa is authorized by general law. Any tax not authorized by general law must necessarily fall by virtue of the preemption clause of Fla. Const. Art. VII, § 1 (1968).
Fla. Stat. § 167.43, F.S.A., deals with the powers of a city. It provides, inter alia:
"The city or town council may raise, by tax and assessment upon all real and personal property, and by license on professions, business and occupations carried on within the corporation, all sums of money which may be required for the *4 improvement and good government of the city, and for carrying out the powers and duties herein granted and imposed; and enforce the receipt and collection of the same in the manner now provided by the laws of the state for the assessment and collection of state taxes and licenses."
An additional statute pertinent to the decision here is Fla. Stat. § 212.081(3) (b), F.S.A. It reads, inter alia:
"It is also the legislative intent that there shall be no pyramiding or duplication of excise taxes levied by the state under this chapter and no municipality shall levy any excise tax upon any privilege, admission, lease, rental, sale, use or storage for use or consumption which is subject to a tax under this chapter unless permitted by general law; provided, however, that this provision shall not impair valid municipal ordinances which are in effect and under which a municipal tax is being levied and collected on July 1, 1957."
By virtue of Ch. 61-2927, Laws of Florida (1961), the power of the City of Tampa to levy taxes is controlled by Fla. Stat. § 212.081 and § 167.43, F.S.A.
A close analysis of the above-quoted statutes leads us to the conclusion that the general laws of Florida do not authorize the tax in question. The disputed tax is denominated as a license tax on retail merchants and is measured by gross sales of the merchant during the preceding fiscal year. The taxpayer is taxed $10.00 for the first $3,000 in sales and $1.00 for every $1,000 in sales thereafter. The taxes are levied over and above the flat license tax paid by the respondents for the privilege of operating an automobile dealership.
Fla. Stat. § 212.081, F.S.A. prohibits the cities from imposing a sales tax, and § 167.43 is no authority for such a "license tax measured by gross sales." This is our only valid conclusion in light of the authority, cited above, calling for any doubts to be resolved in favor of the taxpayer.
It has been contended that the provisions of Section 6, Article VIII, Florida Constitution, 1968, preserves inviolate the power of municipalities to tax, even though that power rests upon special law; that the enactment of Article VII, Sections 1 and 9 do not terminate existing laws on the subject. We do not agree with this contention.
Section 6, Article VIII, is the Schedule of the new Article VIII and provides in part:
"(a) This article shall replace all of Article VIII of the Constitution of 1885, as amended, except those sections expressly retained and made a part of this article by reference.
(b) Counties  county seats  municipalities  districts. The status of the following items as they exist on the date this article becomes effective is recognized and shall be continued until changed in accordance with law: the counties of the state; their status with respect to the legality of the sale of intoxicating liquors, wines and beers; the method of selection of county officers; the performance of municipal functions by county officers; the county seats; and the municipalities and special districts of the state, their powers, jurisdiction and government." (emphasis ours).
Though on its face the foregoing provision (b) of Article VIII, Section 6, may appear to retain for municipalities and special districts every power that they possessed prior to the adoption of the 1968 Florida Constitution, further examination demonstrates that this is not the case. Article VIII was submitted for adoption by the people of this state separately from other Articles of the Florida Constitution. Section 6, Article VIII is the separate schedule for that Article. Commentary Art. VIII, Section 6, F.S.A. In keeping with *5 this function, which is to provide for the adjustment of matters affected by the change from old Article VIII to new Article VIII, subsection (b), quoted above, states that the status of the various items as they exist on the date "... this Article becomes effective ..." are recognized and continued. This function as the schedule to only Article VIII is further exemplified by the fact that the various items considered by Section 6 are also those items specifically considered by Sections 1 through 5 of Article VIII. For example, it recognizes and continues the status of the counties of the state which obviously refers to Section 1 of Article VIII of the Florida Constitution of 1968; it refers to the status of the counties with respect to the legality of the sale of intoxicating liquors which obviously refers to Section 5 of Article VIII of the Florida Constitution of 1968; it refers to the method of selection of county officers which has reference to Subsection (d) of Section 1 of Article VIII of the Florida Constitution of 1968; it further refers to the performance of municipal functions by county officers which obviously has reference to Section 4 of Article VIII of the Florida Constitution of 1968; it refers to the county seats which has reference to Subsection (k) of Section 1 of Article VIII of the Florida Constitution of 1968; and it refers to the municipalities and special districts of the state which has obvious reference to Sections 2 and 4 of Article VIII of the Florida Constitution of 1968. Nowhere is there any indication that Section 6 was intended to vitiate the effect of any provision in any other article of the Florida Constitution of 1968, nor any indication that Section 6 of Article VIII had any function other than to operate as the schedule for Article VIII of the 1968 Constitution.
The schedule for the other articles of the Florida Constitution of 1968 is found in Article XII of said Constitution. The limited application of Section 6 of Article VIII is further evidenced by the terminology of Subsection (a) thereof as stated above. Neither the language of Article VIII in general nor of Article VIII § 6 states that the purpose of the article is to supersede other provisions of the Constitution of 1968 specifically dealing with taxation and limitations thereon. It is further significant in that Sections 1 and 9 of Article VII of the Florida Constitution of 1968 do not find their genesis in Article VIII of the Constitution of 1885; and, therefore, presumably, Article VIII of the Florida Constitution of 1968 would not replace them.
Further indication that the final phrase of Subsection (b), Section 6, of Article VIII of the Florida Constitution of 1968 should not be given the breadth of application which is contended is shown by the fact that Sections 2 and 15 of Article XII of the Florida Constitution of 1968 would be rendered totally superfluous by such an interpretation. Section 2 of Article XII provides that counties, municipalities, and special districts may continue their existing tax millages until reduced by law. Section 15 of Article XII retains for any special district the existing ad valorem taxing powers vested in them. Both of these are totally unnecessary if Section 6 of Article VIII is given the contended breadth of application. An elementary rule of construction is that if possible, effect should be given to every part and every word of the Constitution and that unless there is some clear reason to the contrary, no portion of the fundamental law should be treated as superfluous or meaningless or inoperative. Thus a construction of the Constitution which renders superfluous or meaningless any of the provisions of the Constitution should not be adopted by this Court. State ex rel. West v. Butler, 70 Fla. 102, 69 So. 771 (1915).
Recent cases of the Supreme Court do not reflect a recognition that Section 6(b) of Article VIII is to be so broadly interpreted. For example, if Article VIII, Section 6(b), were construed as broadly as contended, continuing all municipal powers until changed by law, then the City of St. *6 Augustine would have retained the power to restrict its bond elections despite the provisions of Article 7, Section XII, of the Florida Constitution of 1968. This is clearly inconsistent with the Supreme Court's decision in State v. City of St. Augustine, 235 So.2d 1 (Fla. 1970). Further, in State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1970), the Supreme Court, after lengthy discussion of Article VII, Section 9(b), regarding millage limitation, stated that if a county assumes municipal functions and arrogates to itself a portion of the 10 mills of taxation permitted for those municipal purposes, then an affected municipality may advance its millage rate only to include the difference not arrogated by the county or in the alternative bears the burden of a referendum permitting a millage rate above the 10 mill limitation.
The foregoing is pertinent in that if Section 6 of Article VIII were given the contended breadth, then there would be no pertinence in discussing Section 9(b) of Article VII of the Florida Constitution of 1968 for its operation would be vitiated by Section 6 of Article VIII. Obviously, the Court did not consider this to be the case.
A final case which reflects that Section 6 of Article VIII is not to be so broadly interpreted is the Supreme Court's decision of Bannon v. Port of Palm Beach District, 246 So.2d 737 (Fla. 1971). In that case the Court held that Section 10 of Article VII of the Florida Constitution of 1968 acts to protect public funds from being exploited by a special district, but found that in that case the constitutional provision was not violated. If Section 6 of Article VIII were given the breadth of application which is contended, then the entire constitutional discussion contained in the aforementioned case would be rendered a nullity for Section 10 of Article VII of the Florida Constitution of 1968 would have no application, having been rendered inoperative by Section 6 of Article VIII.
All the foregoing seem to clearly establish that the function of Section 6 of Article VIII was only to implement the remaining portions of Article VIII of the Florida Constitution of 1968. Any other construction leads to the unreasonable and unacceptable conclusion that no provision of the Florida Constitution of 1968 had any effect whatsoever on the powers of either the municipalities or special districts of the State of Florida.
Allegation is also made that the Tampa Ordinance in question having been enacted before July 11, 1957, was "grandfathered" under Section 212.081(3) (b), Fla. Stat., F.S.A., as set out above and therefore meets the test of the new 1968 Constitution that city taxes must be enacted under the authority of general law.
As aforestated the City of Tampa originally enacted the Ordinance imposing the tax in question in 1954. However, the Charter of the City of Tampa was changed by legislative action in 1961 and certain provisions of the Charter were repealed and certain provisions were re-enacted. Chapter 61-2927, Laws of Florida, Acts of 1961, to provide, among other things:
"That the city council [of the City of Tampa] shall have the power to ... license privileges, businesses, occupations and professions carried on and engaged in within the city limits, and the amounts of such license tax shall be fixed by city ordinances, which amounts of such taxes shall not be dependent upon the general state law; provided, however, that the city shall in the future be prohibited from assessing, levying, collecting, or imposing upon any said named companies or corporations on their property any further or other tax, burden, assessment, imposition or rental of any kind or character whatsoever, except said privilege taxes and the ad valorem tax on real and personal property, paving, sewerage, or sidewalk assessments...." (emphasis supplied).
Chapter 61-2927, Section (5) repealed all laws and parts of laws in conflict therewith.
*7 Petitioners argue that the tax is distinguishable from a sales tax because it is not payable unless the merchant elects to continue in business during the year following the making of the sales. This argument amounts to no more than the statement of a legal fiction. More importantly, it permits the city to accomplish indirectly what it is prohibited from doing directly.
This Court can take judicial notice that a vast majority of businesses remain in operation from year to year. Thus, distinguishing a sales tax from the present tax on the basis that the merchant need not elect to continue in business during the following year thereby avoiding the tax, is pure fictionalizing. Characterizing the present tax as a sales tax is doubly reinforced in that the City imposes another flat license tax for the privilege of operating respondent's business. It is evident that the City, after having imposed the traditional valid license tax, is attempting to increase its revenue by taxing the sales within the City.
Any prior decisions of this Court which may appear to indicate a contrary view are modified to conform to this opinion. See Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054 (1935), and Valentine v. Walgreen Co., 299 U.S. 32, 57 S.Ct. 56, 81 L.Ed. 22 (1936).
This decision is prospective only, is not retroactive and affords no remedy for taxes previously paid by persons not making a judicial attack on the ordinance.
Accordingly, the writ of certiorari heretofore issued is hereby discharged.
It is so ordered.
CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
DEKLE, J., dissents with opinion.
DEKLE, Justice (dissenting):
Fla. Stat. § 167.43 which is set forth in the majority opinion is the grant of general taxing powers to cities and expressly authorizes occupational and business license taxes. This is of course a general statute so it satisifes the new requirement in the 1968 Constitution pointed out in the majority, that city taxes be authorized under a general statute. Accordingly, the only obstacle asserted by the majority to the Tampa taxing ordinance is its treatment of the ordinance as a "sales" tax which it suggests is prohibited by the second general statute which it sets forth, § 212.081(3) (b). This statute makes the sales tax an exclusive area of the state but with the proviso:
"... that this provision shall not impair valid municipal ordinances which are in effect and under which a municipal tax is being levied and collected on July 1, 1957."
Tampa's 1954 ordinance[1]was in effect on that date and thus plainly falls within this proviso, expressly exempting the Tampa Ordinance. It is not therefore prohibited, even if it is a "sales" tax, and accordingly is being properly levied under general statute § 167.43.
Actually, however, it is not a sales tax at all. We have heretofore expressly so held in several cases referred to later.
At the end of the majority opinion mention is made of this well-founded point of petitioners, that the Tampa Ordinance is exempt from the sales tax preemption by the state, in the very statute in question, to-wit, Fla. Stat. § 212.081(3) (b). The majority terms it as being "grandfathered" under that statute. Such may be the effect of the provision but it is really a clear-cut exemption. And it nullifies any argument that the ordinance is a "sales" tax because it doesn't make any difference since it is expressly exempted. And so here is another general law (§ 212.081(3) (b)) under which the Tampa tax may function  as "grandfathered" within it, if you wish.
It is apparent that the majority is unable to answer this contention. It says nothing *8 in refutation of it, as indeed it cannot under the law. It is understandable that we sometimes hold a perfectly legitimate philosophy but one which simply cannot be legally supported. The majority accordingly proceeds merely to recite from "Chapter 61-2927, Laws of Florida, Acts of 1961," which is immaterial here, an amendment to the basic 1917 Charter of the City of Tampa. This precise tax has been in effect since 1954 in that Charter. It must be held to have been in contemplation of the legislature in its passage of later § 212.081(3) (b) to limit the sales tax to the state, because the Legislature chose to exempt "municipal ordinances which are in effect." It is accordingly perfectly valid under this general law.
The precise wording from the Tampa Charter as emphasized in the majority's quote at the close of the opinion was not added and was not changed by that 1961 amendment. The very same language was there when the tax went into effect in 1954, so it could hardly have changed this situation as apparently sought to be inferred. The proviso referred to in the emphasized Charter language  that there could be no other tax imposed  was already there in 1954 and when the state taxing statute here was enacted, § 212.081(3) (b). The language meant that no other, additional tax than this one could be imposed in the future. It could have no new meaning in simply being repeated, nor be considered as having "repealed" itself! There was nothing in conflict to be repealed (which is apparently the point suggested). It was already there. The only thing changed as a matter of fact by the amendment was simply the deletion of some old provisos regarding "street railway companies," telegraph companies and other utilities which had theretofore stated fixed dollar sums per annum and this was removed from the Charter. The basic provisions remained the same regarding the tax.
We do not need to go into the belabored interpretations and applications of the schedule for new Art. VIII in § 6, with which the majority opinion concerns itself (though this is open to argument, I feel). Neither, however, should such obfuscation overshadow the clear and irrefutable point of law that the City of Tampa's license tax in question is valid as "grandfathered" by the express terms of the very statute by which it is struck down as a prohibited "sales" tax under Fla. Stat. § 212.081(3) (b). To do so simply ignores the exception which is set forth in that statute or "repeals" it by judicial fiat. That is the prerogative of the Legislature. The proviso of this general law, Fla. Stat. § 212.081(3) (b), meets the very test which the majority sets up and which is indeed provided in our new 1968 Constitution, Art. VII, §§ 1 and 9. I too recognize it, but I also recognize the clear provision of the aforesaid general law's exception of those ordinances previously in existence which the statute says it "shall not impair." The majority has proceeded to do just that  impair it.
Neither does the new constitutional requirement that a tax be by general law forthwith eliminate, by its very enactment, all existing municipal taxing laws not general in nature. The enactment of a new, different constitutional provision does not terminate ipso facto all existing laws on the subject. Such constitutional provisions, unless expressly otherwise providing, are not self executing. They require for such a change some implementing legislation and until it is enacted (which it may never be) the "old" existing law continues in effect "until changed in accordance with law."[2]
*9 Fla. Const. art. VII, § 9 in the new limitation on the taxing authority of municipalities provides:
"(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem on taxes intangible personal property and taxes prohibited by this constitution." (emphasis ours)
The terminology employed in this quoted constitutional provision that the tax levy "may be authorized by law" and "may be authorized by general law" clearly connotes prospectivity. It contemplates that there must be legislative action to effectuate the levy of such tax. It does not terminate existing laws. Also, Article VII, § 1(a), preempting taxation to the state adds "except as provided by general law," likewise contemplating implementing legislation which may either create such a tax or repeal or cancel existing, presently valid taxing ordinances or special statutes creating a municipal tax. These do not simply stand repealed without any legislative action.
This requirement for supplementing legislation to place constitutional provisions into effect (or to repeal existing laws) is not only logical and necessary in the orderly process of government to prevent disruption of the normal functions, but it is also broadly supported by the general law and by the cases decided over the years by this Court. The general law on the subject is set forth as follows:
"While a new constitution is, by its very nature, intended to supersede a prior constitution, as discussed supra § 42, it is not intended to supersede the entire body of statutory law. To the extent that existing statutes are not expressly or impliedly repealed by the constitution, or by constitutional amendments, they remain in full force and effect....
"It is a generally accepted rule, however, that repeals by implication are not favored; in fact there is a presumption against such a repeal... ." 16 C.J.S. Const. Law § 43, pp. 134, 136.
In State ex rel. Reynolds v. Roan, 213 So.2d 425 (Fla. 1968), the Board of Commissioners attempted forthwith to end the term of Superintendent Reynolds prior to its normal expiration of January 1969. On the effective date of Article VIII, § 6(a), however, Appellant Reynolds was serving the aforesaid unexpired term under a valid appointment by the Board and under a Commission signed by the Governor pursuant to such appointment. After pointing out such fact, this Court held then, speaking through the author of the current view, Mr. Chief Justice Roberts, that the new constitutional amendment did not authorize a summary removal from office by the Board of an incumbent superintendent who was serving an unexpired term; that it would have to await the expiration of that term; that it did not abolish the office of superintendent because the amendment did not clearly express an intention to change the existing law.
The same is true here regarding taxation: that the constitutional amendment does not void or abolish the tax until a general law (which is the new requirement) is passed  or the special law now providing the tax is repealed (although we already have the two existing general laws applying in this case as set forth above). The Legislature has the choice  or it may choose to leave it as it is.
In another opinion with Mr. Justice Roberts as Chief Justice, author, this Court in In Re Advisory Opinion to Governor, 132 So.2d 163 (Fla. 1961), considered this very question of a different provision in the Constitution and in an existing statute (which we have here). The existing statute, Chapter 26835, Laws of Florida, 1951, provided an additional County Judge in counties with "a Population of 325,000 or More." This statute (already in effect) was held as properly implementing the later *10 adopted constitutional provision, Art. V, § 7(2), which authorizes an additional County Judge in all counties with a total population in excess of 375,000. Since the constitutional amendment did not clearly or definitely repudiate the existing statute, we held the statute was not "repealed" by the constitutional amendment.
Specifically, the Court stated (supra at p. 169):
"In considering the effect of constitutional amendments upon existing statutes, the rule is that the statute will continue in effect unless it is completely inconsistent with the plain terms of the Constitution. However, when a constitutional provision is not self-executing, as is the case here, all existing statutes which are consistent with the amended Constitution will remain in effect until repealed by the Legislature. Implied repeals of statutes by later constitutional provisions is not favored and the courts require that in order to produce a repeal by implication the repugnancy between the statute and the Constitution must be obvious or necessary. Pursuant to this rule, if by any fair course of reasoning the statute can be harmonized or reconciled with the new constitutional provision, then it is the duty of the courts to do so. 50 Am.Jur., Statutes, Section 540-541, pages 546-548; Opinion of Justices, 251 Ala. 96, 36 So.2d 480; Porter v. First National Bank, 96 Fla. 740, 119 So. 130, Rehearing Denied, 96 Fla. 740, 119 So. 519." (emphasis ours)
It is accordingly clear that we have consistently and very properly recognized (without an automatic "demise") existing legislation until otherwise changed by law "if by any fair course of reasoning the statute can be harmonized or reconciled with the new constitutional provision." (supra at p. 169) Such is the case here and the preexisting special law (City Charter), (amended § 3, Ch. 7714, Laws of Fla., Acts of 1917, as amended in Ch. 61-2927, Laws of Fla., Acts of 1961) and Ordinance No. 1708-A of the City of Tampa (now compiled Code § 21-50), fixing the tax in question pursuant thereto, remain and are valid and in full force and effect in my view.
Stare decisis suffers another blow by this holding. (It does not even extend the consideration of "final rites" to this Court's earlier decisions expressly upholding the very tax ordinance which is now struck down.) This very ordinance, and the same earlier taxing ordinance on wholesale merchants in Tampa, both measured in part by the amount of gross sales made the previous year by the merchant, were expressly upheld by this Court in 1939 against a variety of challenges. Adams Jewelry Co. v. City of Tampa, 137 Fla. 657, 189 So. 29 (1939); Bentley-Gray Dry Goods, Co. v. City of Tampa, 137 Fla. 641, 188 So. 758 (1939). This Court specifically held that the basis for measurement of the Tampa tax is a proper one for a license tax. The "gross receipts" feature of a tax was found not to be a sales tax also in Liggett Drug Co., Inc. v. Lee, 126 Fla. 359, 171 So. 326 (1936). We said (p. 330):
"The `gross receipts' feature of the tax found in section 4 of the act is not a `sales tax' although its practical incidence may be analogous to such a tax. On the contrary, such `gross receipts' tax is a privilege tax measured by the volume of business done in the next preceding month as reflected in the `gross sales' of that month, as defined in the act." (emphasis supplied)
In Smith v. City of Miami, 160 Fla. 306, 34 So.2d 544 (1948), we approved a municipal occupational license tax measured, as here, by gross sales. We said at pp. 548-549:
"The fact that the amount of the tax is measured by the quantity of the merchandise handled, and the fact that its rate is based on a retail price prevailing for the product, are administrative features, *11 which do not serve to take the tax out of the category of an excise tax on business engaged in within the City limits... .
* * * * * *
"There is nothing improper in having one tax or portion of the tax represented by flat fee, as in this case, and an additional excise on persons conducting the same business on a graded scale depending on the volume of sales made in the business... ."
The District Court expressly grounded its holding, here affirmed, that the tax imposed by petitioner is in reality a sales tax rather than an occupational license tax, on the following language in State ex rel. Adams v. Lee, 122 Fla. 639, 166 So. 249 (1935), in which Justice Davis explained the ruling in City of DeLand v. Florida Public Service Co., 119 Fla. 819, 161 So. 740 (1935), viz:
"[I]t was decided by this court that a privilege tax capable of being calculated in the cost of doing business and thereupon passed on to the ultimate consumer, although provided to be measured by the volume of business done during a preceding specified period of time, would be sustainable and enforceable as a valid license (privilege) tax, if not otherwise so unreasonably burdensome as to amount to spoilation under the guise of privilege taxation." (emphasis supplied)
Apparently the District Court construed the foregoing excerpt from State ex rel. Adams v. Lee, supra, as an authoritative statement that City of DeLand being referred to, had held that a tax on gross sales, although in the guise of a privilege tax, is nonetheless a sales tax. It does not so read to me.
In State ex rel. Lane Drug Stores v. Simpson, 122 Fla. 582, 166 So. 227 (1935), in a special concurring opinion, Justice Davis noted that the privilege tax imposed by the City of DeLand:
"... was struck down and condemned by this court as confiscatory, because under the terms of the ordinance imposing the tax, the utility company was expressly forbidden to raise its rates to absorb it...." (emphasis supplied)
The DeLand tax was not struck down, as the District Court's opinion implies, because it was a sales tax enacted under the guise of a privilege tax.
It can hardly be said that the tax in the case at bar  $10 on the first $3,000 of annual gross sales, and $1 on each additional $1,000  is confiscatory or amounts to spoilation of the taxpayer's assets. It is most reasonable. It is simply a yardstick by which the amount of a concededly authorized license tax is measured, which method, it seems to me, is far more logical than the usual arbitrary method used of merely fixing an amount without regard to size, nature or extent of business done. The tax imposed by the City of Tampa by Ordinance No. 1708-A is in my opinion, an authorized license tax on the privilege of doing business in that city.
As held by the learned trial judge, the city is clearly authorized and empowered by law to enact and impose such a tax by its charter as amended by Sections 1 and 3, Ch. 2927, Special Acts of Florida, 1961.
I would quash the decision of the District Court and direct the reinstatement of the trial judge's final judgment.
NOTES
[1] 1954 Tampa Ordinance No. 1708-A (now Compiled Code § 21-50).
[2] Porter v. First National Bank of Panama City, 96 Fla. 740, 119 So. 130 (1928), Rehearing Denied 119 So. 519 (Fla. 1929); Draughon v. Heitman, 124 Fla. 24, 168 So. 838 (1936), Rehearing Denied 125 Fla. 822, 170 So. 306 (Fla. 1936); State ex rel. Wilder v. Jacksonville, 157 Fla. 276, 25 So.2d 569 (Fla. 1946).