QUESTION: May revenues derived by a municipality from a "utility franchise tax" contractually bargained for or imposed by the municipality on a public utility company conducting business within its limits be used as a criterion in determining whether such municipality has met the minimum tax eligibility or revenue equivalency requirements of s. 218.23(1)(c), F.S. (1974 Supp.) in view of Florida Public Service Commission Order No. 6591, dated April 4, 1975, directing an electrical utility company to assess "franchise taxes" imposed on the company by various governmental bodies throughout its service area in Florida directly upon the customers of the company situate within the respective governing bodies which impose such "taxes" and as a separate item on each bill?
SUMMARY: Contractual fees or charges collected by a unit of local government for granting a franchise to a public utility company to furnish utility services within that government's territorial jurisdiction, notwithstanding the characterization of such charges by the Florida Public Service Commission as "franchise taxes," in fact and in law are not taxes under Florida's Constitution and general laws and are not "utility taxes" within the purview of s.218.23(1)(c), F.S. (1974 Supp.). Therefore, revenues derived by a municipality from such charges or fees may not be used as a criterion by the Department of Revenue in determining whether such municipality has met the minimum tax eligibility or revenue equivalency requirements of s. 218.23(1)(c) in order to participate in state revenue sharing beyond its minimum entitlement. Your question is answered in the negative. Initially it should be noted that the referenced order of the Florida Public Service Commission does not, nor could it legally, authorize any tax — it is not a "general law" within the purview of Art. VII, s. 9(a), State Const., which provides that units of local government "may be authorized by general law to levy other taxes [i.e., other than ad valorem taxes] for their respective purposes," (Emphasis supplied.); nor is it a "law" within the purview of Art. VII, s. 1(a), State Const., which provides that "[n]o tax shall be levied except in pursuance of law." Secondly, if the order is referring to a franchise tax levied under the authority of a city charter act or special law or local law of any kind enacted prior to or after the adoption of the 1968 State Const., whether labeled a "franchise tax," a "license tax," or any other form of excise tax, such charter or special or local law was superseded, preempted and invalidated by Art. VII, s. 9(a), and is of no viability or legal efficacy. City of Tampa v. Birdsong Motors, Inc., 261 So.2d 1 (Fla. 1972). In addition, I am unaware of any constitutional or general law authorization for the levy by a unit of local government of a franchise tax, or any other form of excise tax on the franchise granted by such unit of local government to a public utility company to furnish utility services within its jurisdictional or territorial limits. Thus, although denominated as franchise taxes in the order, it appears more likely that the charges referred to therein are contractual fees or charges negotiated or contracted for by the governmental bodies under, and as consideration for, franchise agreements between the company and the respective governmental bodies for the privilege of using the public rights-of-way and places and conducting business thereon within the territorial limits of the respective governmental bodies or the exercise therein of other special privileges granted by the governmental body concerned. Part II of Ch. 218, F.S., is the "Revenue Sharing Act of 1972," and s.218.23, F.S. (1974 Supp.), contains certain criteria which must be met by a "unit of local government," defined by s. 218.21(1) as a county or municipal government, before such unit of local government is eligible to participate in the state revenue sharing program beyond its minimum entitlement. Section 218.23(1)(c) provides in pertinent part: (1) To be eligible to participate in revenue sharing beyond the minimum entitlement in any fiscal year, a unit of local government is required to have: * * * * * (c) Levied . . . ad valorem taxes, exclusive of taxes levied for debt service or other special millages authorized by the voters, to produce the revenue equivalent to a millage rate of 3 mills on the dollar based on the 1973 taxable values as certified by the assessor pursuant to s. 193.122(2) or, in order to produce revenue equivalent to that which would otherwise be produced by such 3-mill ad valorem tax, to have collected an occupational license tax or a utility tax, or both of these taxes, in combination with the ad valorem tax. . . . (Emphasis supplied.) Your question thus involves a determination of whether the term "utility tax" as used in s. 218.23(1)(c), supra, refers to or includes a "franchise fee" or "franchise charge" or similar contractual fee or charge paid to the municipality under, and as consideration for, a franchise agreement with the municipality by the utility company or the franchiser. I think not, for a tax is not predicated on contract and in no sense depends upon the will of the person on whom it is imposed, nor for that matter upon the will of taxing officials. Kathleen Citrus Land Co. v. City of Lakeland, 169 So. 356 (Fla. 1936); St. Lucie Estates, Inc. v. Ashley, 141 So. 738 (Fla. 1932); State v. Florida State Racing Commission, 70 So.2d 375 (Fla. 1953); and State v. Caldwell, 23 So.2d 855 (Fla. 1945). The Revenue Sharing Act of 1972, Part II, Ch. 218, supra, was initially enacted by Ch. 72-360, Laws of Florida, and, although the language now appearing in s. 218.23(1)(c), F.S. (1974 Supp.), reflects amendments made to the language enacted in Ch. 72-360, the "revenue equivalency test" containing the term utility taxes is the same. The term utility taxes is not defined in Ch. 72-360, nor am I able to find statutory authority specifically for a tax denominated as a utility tax. However, s. 2 of Ch. 72-360 provides: No municipal charter may prohibit or limit the authority of the governing body to levy ad valorem taxes or utility service taxes authorized under section 167.431. Any word, sentence, phrase, or provision, of any special act, municipal charter, or other law, that prohibits or limits a municipality from . . . levying utility service taxes within the limits fixed by section 167.431, is hereby nullified and repealed. (Emphasis supplied.) It is well established in Florida that in ascertaining the legislative intent of a statute, effect should be given to all parts of the statute. See Florida Jai Alai, Inc. v. Lake Howell Water Reclamation District, 274 So.2d 522 (Fla. 1973), and 30 Fla. Jur. Statutes s. 118 (1974). Thus, the context of s. 2 of Ch. 72-360 and the reference therein to the "utility service taxes authorized under section 167.431" when read with the provisions of s. 218.23(1)(c) would seem to indicate that the term "a utility tax" used in s. 218.23(1)(c) is in reference to the utility service tax or public service tax authorized to be levied by municipalities by s. 167.431, F.S. 1971 [now s. 166.231, F.S. (1974 Supp.)]. See Merrill v. Dade County, 272 So.2d 187, 190 (3 D.C.A. Fla., 1973). An additional factor to consider in ascertaining the proper meaning of the term utility taxes as that term is used in s. 218.23(1)(c), supra, is that the other local government revenue sources described in that section, viz., ad valorem taxes and occupational license taxes, are clearly taxes authorized by the constitution or general law to be levied by local governments. Thus, again construing the term utility tax as it is used in s. 218.23(1)(c) in light of the other terms used in that statute, i.e., "an occupational license tax" and an "ad valorem tax," it is my opinion that the term utility taxes refers to the same nature and kind of revenue sources available to local governmental units, pursuant to the constitution or general law, as ad valorem and occupational license taxes — i.e., taxes be they ad valorem, license, or excise taxes, denominated as such by the constitution or general law, and so authorized to be levied by such units of local government. In this context, then, the tax authorized by s. 167.431, F.S. 1971 [now s. 166.231, F.S. (1974 Supp.)], i.e., the utility service taxes referred to in s. 2 of Ch. 72-360, supra, would appear to be the "utility tax" referred to in s. 218.23(1)(c). On the other hand, the contractual fees bargained for or exacted by a unit of local government for granting a franchise or special privilege to a company furnishing utility services within that government's territorial jurisdiction is not of the same nature or kind of revenue source for such unit of local government as ad valorem or occupational license taxes or any other category of excise taxes. The payments made by the grantee of a franchise to the municipality for the rights granted to it under the franchise are in the nature of contractual fees or payments, not taxes. Cf. AGO 072- 317. I am unaware of any constitutional or general law authorization for the levy by a municipality of a tax on the franchise granted by such municipality to a public utility company to furnish utility services within that government's territorial limits or jurisdiction. Thus, payments by the grantee of such a franchise, if characterized as taxes, would be either "taxes" purportedly authorized by a city charter act or special or local law and as such they would be invalid, Art. VII, s. 9(a), State Const., and City of Tampa v. Birdsong Motors, Inc., supra, or, notwithstanding the characterization of such payments in the Florida Public Service Commission Order No. 6591 as "franchise taxes," they are not in fact and in law "taxes" within the purview of Art. VII, ss. 1(a) and 9(a), State Const., s. 166.201, s. 166.231, or s.218.23(1)(c), F.S. (1974 Supp.). Cf. State ex rel. Watson v. Caldwell, 23 So.2d 855, 856 (Fla. 1945); State v. Florida State Racing Commission, 70 So.2d 375 (Fla. 1953).