J. Jackson Walter Executive Director Department of Business Regulation Tallahassee
QUESTIONS:
1. Pending a final decision on the appeal of the decision declaring Ch. 77-49, Laws of Florida [ss. 83.770-83.794, F. S.], unconstitutional, are there any limitations on the powers vested in the State Mobile Home Tenant-Landlord Commission by s. 7 of Ch.77-49 [s. 83.782, F. S.]? And, more specifically, can the commission, once organized, commence rulemaking pursuant to Ch. 120, F. S.?
2. Pending a final decision on the appeal, are there any changes in the relationships explained in AGO 077-111, dated October 20, 1977, between the commission, the Board of Business Regulation, and the Department of Business Regulation? And, are there any changes with respect to the appropriate handling of petitions filed by tenants pursuant to s. 8(1) of Ch. 77-49, Laws of Florida [s. 83.784(1)(a), F. S.]?
3. Pending a final decision on the appeal, what authority does the commission have to collect funds? And, more specifically:
 a. Can the commission, once organized, collect registration fees from park owners as provided in s. 6(2) of Ch. 77-49, Laws of Florida [s. 83.780(2), F. S.]?
 b. If the Supreme Court affirms the circuit court decision, must any registration fees deposited in the Mobile Home Tenant-Landlord Trust Fund be returned to the registrants? If not, what would be the proper disposition of the trust funds?
 c. If the park owners pay registration fees and the Supreme Court affirms the circuit court decision, can park owners nonetheless charge back the fees to the mobile home owners?
 d. If the Commission makes any expenditures from the trust fund prior to the Supreme Court affirming the circuit court decision, would your answer to question 3b remain unchanged, and would there be any liability by the state?
SUMMARY: Upon appeal by a state agency of a trial court's declaration of the unconstitutionality of a state statute, and injunction from enforcement of such statute, the trial court's order is stayed pending determination on appeal. Pending the final decision on appeal, the State Mobile Home Tenant-Landlord Commission may continue its functions, including the acceptance of registration fees. Whether registration fees are refunded should Ch. 77-49, Laws of Florida, be ultimately held unconstitutional is a decision to be made by the Comptroller or the court. Registration fees probably can be charged back to tenants even if the act is held unconstitutional. Any refunds allowed by the Comptroller should be made from the fund benefited by the original payment.
AS TO QUESTION 1:
Chapter 77-49, Laws of Florida [ss. 83.770-83.794, F. S.], creating the Mobile Home Tenant-Landlord Commission, was recently declared unconstitutional by a Leon County Circuit Judge. The defendants, the Department of Business Regulation and the Governor and Attorney General, immediately filed an appeal to the Florida Supreme Court.
Rule 5.12(1), Florida Appellate Rules, provides:
 . . . When the state or any of its political subdivisions, or any officer, board, commission or other public body of the state or any of its political subdivisions, in a purely official capacity, takes an appeal or petitions for certiorari, the filing of the notice of appeal or the petition for certiorari as the case may be shall perfect the same and stay the execution or performance of the judgment, decree or order being reviewed and no supersedeas bond need be given unless expressly required by the court.
The Florida Supreme Court in Powell v. Florida Land Improvement Co., 26 So. 700 (Fla. 1899), stated the effect of a supersedeas at p. 701:
 . . . a supersedeas upon an appeal from an order granting an injunction operates to prevent the court from enforcing the injunction, and thereby enables the party enjoined to do those things which the injunction forbids without fear of punishment during the pendency of the supersedeas.
Florida law does not distinguish between a mandatory and prohibitive injunction as to the effect of supersedeas. Powell v. Florida Land Land Improvement Co., supra. Contra, City of Miami v. Cuban Vill-Age Co., 143 So.2d 69 (3 D.C.A. Fla., 1962), andsee, City of Miami Beach v. Lansburgh, 217 So.2d 348, fn. 1 (3 D.C.A. Fla., 1969).
The lower court in the instant lawsuit enjoined the state `from implementing the procedures of Chapter 77-49, Laws of Florida, and from exercising the authority, power and discretion contained therein.' Pursuant to Rule 5.12, Florida Appellate Rules, the effect of this order is automatically stayed and the State Mobile Home Tenant-Landlord Commission may legally proceed to function. The commission may, therefore, exercise those powers granted by the act, which include rulemaking powers.
Your first question is answered in the affirmative.
AS TO QUESTION 2:
In AGO 077-111, I delineated the relationship between the State Mobile Home Tenant-Landlord Commission and the Department of Business Regulation. Therein I also discussed the authority of the commission with regard to the acceptance of registrations and handling of petitions. IN AGO 077-111, I concluded:
 Generally, the Rules of the Board of Business Regulation control administrative activities of the Mobile Home Tenant-Landlord Commission. The Commission is not within one of the divisions of the Department of Business Regulation, but is a separate entity within that Department. Until a form is approved by the Commission, the Department cannot officially accept registrations by mobile home parks regulated by the Act. The Department, however, may accept petitions filed by tenants pursuant to Section 8(1) of the Act.
In light of the answer to question 1 hereinabove, the opinions expressed in AGO 077-111 are unaffected by the recent circuit court decision rendering Ch. 77-49, Laws of Florida, unconstitutional.
Your second question is, therefore, answered in the negative.
AS TO QUESTION 3:
You have asked a series of questions regarding the collection and disposition of funds by the State Mobile Home Tenant-Landlord Commission.
Section 6 of Ch. 77-49, Laws of Florida [s. 83.780, F. S.], requires the registration of all mobile home parks containing 100 or more dwelling units. A registration fee of $1 for each dwelling unit contained in the mobile home park shall accompany the application for registration. Presumably by this date those parks required to register have made such application accompanied by the appropriate fee.
Discussed in question 1 hereinabove is the general effect of a stay pending disposition on appeal. The conclusions expressed in that response are equally applicable to the commission's authority to collect registration fees from mobile home parks. Pending the determination of the constitutionality of Ch. 77-49, Laws of Florida, by the Florida Supreme Court, the commission is not only authorized, but is required, to collect registration fees.
Your next query relates to the disposition of the registration fees should the Florida Supreme Court affirm the circuit court's decision rendering Ch. 77-49, Laws of Florida, unconstitutional. Although this question is premature, and its answer may depend upon the Supreme Court's opinion, the following comments are offered.
Section 5 of Chapter 77-49, Laws of Florida [s. 83.778, F. S.], creates the State Mobile Home Tenant-Landlord Trust Fund which consists of registration fees and is used to finance the duties and functions of the commission. Such funds are public funds although not placed in the General Revenue Fund. Cf. Irion v. Lyons, 113 So. 857 (Fla. 1927).
Section 215.32, F. S., provides that moneys received by the state are to be deposited into the State Treasury in various named funds, including the trust funds. Paragraph (2)(b) further provides:
 (b) 1. The trust funds shall consist of moneys received by the state which under law or under trust agreement are segregated for a purpose authorized by law. . . .
 3. All such moneys are hereby appropriated for the purpose for which they were received, to be expended in accordance with the law or trust agreement under which they were received, subject always to other applicable laws relating to the deposit or expenditure of moneys in the State Treasury.
The State Mobile Home Tenant-Landlord Trust Fund, therefore, is a trust fund within the meaning of s. 215.32(1)(b), F. S.
The general rule regarding refunds from the State Treasury was set forth in State ex rel. Victor Chemical Works v. Gay, 74 So.2d 560
(Fla. 1954) at p. 562:
 . . . unless there is some statute which authorizes a refund or the filing of a claim for a refund, money cannot be refunded or recovered once it has been paid although levied under the authority of an unconstitutional statute. (Emphasis supplied.)
Section 215.26, F. S., which governs refunds of payments into the State Treasury, provides in part:
 (1) The Comptroller of the state may refund to the person who paid same, or his heirs, personal representatives or assigns, any moneys paid into the State Treasury which constitute:
(a) An overpayment of any tax, license, or account due;
(b) A payment where no tax, license or account is due; and
(c) Any payment made into the State Treasury in error.
Therefore, in order for the State to refund moneys deposited in the State Mobile Home Tenant-Landlord Trust Fund, such deposit must be within one of the three types of payments set forth in s.215.26, F. S.
In AGO 075-293, I concluded:
 Refunds of examination fees collected and paid under Ch. 491, F. S., may be allowed under s. 215.26, F. S., if the Sanitarians' Registration Board has not initiated any investigations or action concerning the application to take the examination or concerning the applicant's qualifications. When said investigations are begun, the fee is earned, or is due, and no part may be refunded, although the applicant is not permitted to take the examination or the applicant's surviving spouse or estate later requests a return of the fee.
In AGO 076-107, I was confronted with the question of whether the Comptroller could refund moneys from the Land Acquisition Trust Fund, when an application for a dredge and fill permit is canceled or withdrawn by the applicant prior to issuance of the permit. Therein, I concluded:
 Refunds of moneys paid as the sales price of fill materials by applicants for dredge and fill permits who have received the permits may not be refunded because such sales are consummated, fully executed contracts selling the fill material and which are not contingent upon applicants actually dredging the fill. As such, there is no basis for a claim for refund for a transaction fully completed, and likewise no statutory authorization exists for same. If the application for a dredge permit is canceled or withdrawn prior to issuance of the permit, moneys deposited with the application for payment of fill material may be refunded by the Comptroller from the Land Acquisition Trust Fund pursuant to ss. 215.26, 215.32, and 374.041, F. S., because such payments are made on an account not legally due, but only conditionally due, per s. 215.26(1)(b). The right to the refund accrues when the claimant has a right to recover the moneys paid or, in this instance, upon cancellation or withdrawal of the application for the dredge and fill permit.
These opinions in effect hold that a payment is due when the state agency takes some action with regard to such payment.
In the instant case, there appears to be no affirmative duty placed upon the State Mobile Home Tenant-Landlord Commission when the application and registration fee is received and the fee is earned upon receipt by the commission.
In State ex rel. Hardaway Contracting Co., Inc. v. Lee,21 So.2d 211 (Fla. 1945), the Florida Supreme Court ordered the Comptroller to make a refund for taxes paid pursuant to a statute subsequently held unconstitutional, relying upon Ch. 22008, 1943, Laws of Florida, (which is substantially identical to and the predecessor of s. 215.26, F. S.). The court held that, since the statute was declared to be a nullity, taxes paid pursuant to it were payments made when none were due, and also were payments `made into the State Treasury in error.' This case was cited with approval in State v. Green, 174 So.2d 546 (Fla. 1965).
In AGO's 061-4 and 073-464, it was stated that the payment of taxes levied pursuant to a statute which was subsequently held unconstitutional and void by the courts was a `payment where no tax was due.' Although a different refund statute was relied upon, the language is similar to s. 215.26, F. S., so that the rationale would be applicable to s. 215.26.
Compare those decisions with City of Tampa v. Birdsong Motors,261 So.2d 1 (Fla. 1972), wherein the Florida Supreme Court ruled a municipal license tax unconstitutional. As for refunds for payments made while the ordinance was in effect, the court concluded at p. 7:
 This decision is prospective only, is not retroactive, and affords no remedy for taxes previously paid by persons not making a judicial attack on the ordinance.
A corporation sought to recover refund of taxes paid pursuant to the ordinance held unconstitutional in City of Tampa v. Birdsong Motors, Inc., supra. The Second District Court of Appeal held that in view of the prospective nature of the Supreme Court decision invalidating the ordinance, the taxpayer was not entitled to recover for taxes paid prior to the court's decision without a judicial attack on the ordinance. City of Tampa v. G.T.E. Automatic Electric, Inc., 337 So.2d 845 (2 D.C.A. Fla., 1976). Merely bringing an action for a refund within the statute of limitation is not an `attack on the ordinance.'
Therefore, should Ch. 77-49, Laws of Florida, ultimately be held unconstitutional by the Florida Supreme Court, it will be the Comptroller's obligation to determine whether to make such refunds should the Supreme Court not address the issue. If the act is ultimately declared unconstitutional, and the registration fees are not refunded, then the disposition of the moneys in the trust fund is within the sole prerogative of the Legislature.
You also ask if the park owners may charge back to the mobile home owners this registration fee if Ch. 77-49, Laws of Florida, is held unconstitutional. Section 6(2) of the act [s. 83.780(2), F. S.] authorizes mobile home park owners and operators to pass on the $1 per dwelling unit registration fee to the mobile home owners. Generally, when a statute authorizing an act is held unconstitutional, the authority for the act is extinguished. Should Ch. 77-49 be held unconstitutional, parks cannot charge back the registration fee pursuant to s. 6(2) of the act.
It is important to note, however, that a mobile home park could probably charge back this registration under the provisions of Ch. 83, part III, F. S. There is no prohibition against charging back $1 a year as increased rent in those instances where the tenancy is not by written lease. Where the tenancy is by written lease, s. 83.760(3), F. S., allows mobile home parks to pass on to the tenants costs which are incurred due to the actions of any state or local government. The registration fee required by s. 6(2) of Ch. 77-49 [s. 83.780(2)] would appear to be a cost `incurred due to the actions of any state or local government.'
Finally, you query as to the effect of expenditures from the trust fund should Ch. 77-49, Laws of Florida, be ultimately held unconstitutional, and the state's liability for such expenditures. This question presupposes that the Comptroller has elected to refund fees pursuant to s. 215.26, F. S.
Section 215.26(1), F. S., provides for a continuing appropriation from which to make such refunds. This section also provides that the appropriation credited with the payment shall, at the time of making any refund, be charged therewith. The fund that benefited from the original payment is the fund from which the refunds are made. State ex rel. Hardaway Contracting Co., Inc. v. Lee, supra.
Refunds, if provided for, may only be made from the fund benefited. If such fund does not have sufficient moneys from which to make such refunds, then the refunds simply cannot be made, absent a specific legislative appropriation or claims bill.
Prepared by: Martin S. Friedman, Assistant Attorney General