Mr. Matt E. Dannheisser General Counsel Town of Century 504 North Baylen Street Pensacola, Florida 32501
Dear Mr. Dannheisser:
On behalf of the Town of Century, you have asked for my opinion on substantially the following question:
Is a municipality authorized to use its share of the proceeds of the local government infrastructure surtax to acquire and/or renovate a building to lease to a third party health care provider for use as an indigent health care facility if the municipality has not entered into a contract for services with the health care provider?
In sum:
The Town of Century may use its share of the proceeds of the local government infrastructure surtax to acquire and/or renovate a building to be used to provide primary health care to indigent municipal residents. Nothing in section 212.055(2), Florida Statutes, makes the expenditure of surtax funds dependent upon reaching a particular stage of contract negotiations with a provider for performing health care services at the designated public facility. However, the governing body of the Town of Century is under a legal obligation to ensure that these funds are spent for a purpose authorized by the statute and encompassed by the referendum ballot language voted upon to levy the surtax.
The Town of Century is a small municipality located in rural Escambia County. According to your letter there are no primary indigent health care facilities in Century. The town is engaged in discussions to secure such a facility, which would be federally funded. The town has contracted to purchase an existing building within its municipal limits to house the health care facility. Although the town desires to utilize this building for the purpose of providing primary health care to indigents, the town has not entered into any definitive arrangement with a third party to provide such health care services. The town wants to use local government infrastructure surtax proceeds to pay for the acquisition and renovation of the building, but is concerned that it is unable to ensure that the building will be used for indigent health care services.
Florida follows the general rule that taxes may be levied, assessed, and collected only in the manner prescribed by statute.[1] Although a municipality is granted broad home rule powers by Article VIII, section 2(b), Florida Constitution, as implemented through section 166.021, Florida Statutes, its taxing power is derived from Article VII of the Florida Constitution, not Article VIII, Florida Constitution.[2] Thus, this office has stated that a county or municipality has no home rule powers with respect to the levy of taxes, but must be able to point to constitutional or statutory authority in exercising its taxing power.[3]
Section 212.055, Florida Statutes, as amended, is a general law authorizing the imposition of a discretionary sales surtax. Subsection (2) of the statute authorizes counties to levy a local government infrastructure surtax under precisely defined conditions. These conditions prescribe the rates of taxes, the uses for the revenue raised by the taxes, and the procedure to be followed for approving the taxes. Section 212.055(2)(a)1., Florida Statutes, provides that the governing authority in each county may levy a discretionary sales surtax of 0.5 percent or 1 percent. The surtax may be levied and imposed pursuant to a county ordinance approved by the electors in a referendum on the surtax; or the governing bodies of the municipalities representing a majority of the county's population may adopt uniform resolutions establishing the rate of the surtax, which must then be approved by a majority of the county electors voting in a referendum.
Proceeds of the surtax are to be distributed to the county and the municipalities within such county in which the surtax was collected, according to an interlocal agreement. If there is no such agreement, distribution shall be according to the formula provided in section 218.62, Florida Statutes.[4] The proceeds and any accrued interest are to be used to finance, plan, and construct infrastructure and to acquire land for public recreation, conservation, or protection of natural resources and to finance the closure of county-owned or municipally-owned solid waste landfills that are already closed or are required to close by order of the Department of Environmental Protection.[5]
Section 212.055(2)(b), Florida Statutes, provides in part:
"A statement which includes a brief general description of the projects to be funded by the surtax and which conforms to the requirements of s. 101.161 shall be placed on the ballot by the governing authority of any county which enacts an ordinance calling for a referendum on the levy of the surtax or in which the governing bodies of the municipalities representing a majority of the county's population adopt uniform resolutions calling for a referendum on the surtax."
Thus, the statute requires that a general description of the projects to be funded by the surtax revenues be included on the referendum ballot on which approval of the surtax is requested.
Florida courts have recognized the general rule that tax revenues must be expended for the purposes for which they were collected, that is, funds raised by taxation for one purpose cannot be diverted to another use.[6] Further, this office has stated that moneys collected pursuant to an original ordinance imposing a tourist development tax could only be used to accomplish the purposes set forth in the original plan for tourist development and could not be expended for the purposes set forth in a new ordinance or considered in a new tourist development plan.[7]
Section 212.055(2), Florida Statutes, providing that the ballot must contain a general description of the projects to be funded by the local government infrastructure surtax, would appear to limit the expenditure of revenues from such surtax to those projects described on the ballot.[8] This office has noted previously that the statute only requires a general description of the projects to be funded, thus giving local governments some flexibility in describing the type of projects to be funded rather than requiring a description of each specific project itself.[9] I am, however, of the opinion that revenues from the local government infrastructure surtax must be expended on projects that fall within the general description contained on the ballot.
While you have provided this office with no indication of the ballot language that is proposed or may have been included in a previous successful referendum, the statute does authorize the expenditure of surtax proceeds
"to finance, plan, and construct infrastructure and to acquire land for public recreation or conservation or protection of natural resources and to finance the closure of county-owned or municipally-owned solid waste landfills that are already closed or are required to close by order of the Department of Environmental Protection."[10]
For purposes of this statutory paragraph the term "infrastructure" is defined as:
Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of publicfacilities which have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto.[11] (e.s.)
The legislative history for the enactment of section 212.055(2), Florida Statutes, indicates that the statute was intended to provide a means of meeting the tremendous strains placed upon the infrastructure of local government by the influx of people moving into this state.[12] Thus the statute, which authorizes a county to impose a surtax to address those burdens, requires that the surtax revenues be used to meet the county's infrastructure needs.[13]
The term "public facilities" is not defined for purposes of Chapter 212, Florida Statutes, but the term is used in a number of places throughout the statutes. Section 163.3164, Florida Statutes, providing definitions for county and municipal planning and land development regulation, defines the term "[p]ublic facilities" as:
"[M]ajor capital improvements, including, but not limited to, transportation, sanitary sewer, solid waste, drainage, potable water, educational, parks and recreational, and health systems andfacilities, and spoil disposal sites for maintenance dredging located in the intracoastal waterways, except for spoil disposal sites owned or used by ports[.]"[14] (e.s.)
The term "[p]ublic facilities" is also defined for purposes of the Florida Local Government Development Agreement Act.[15] Section163.3221(13), Florida Statutes, provides that the phrase means: "major capital improvements, including, but not limited to, transportation, sanitary sewer, solid waste, drainage, potable water, educational, parks and recreational, and health systems andfacilities." (e.s.)
With regard to special districts, "[p]ublic facilities" are
"major capital improvements, including, but not limited to, transportation facilities, sanitary sewer facilities, solid waste facilities, water management and control facilities, potable water facilities, alternative water systems, educational facilities, parks and recreational facilities, health systems and facilities, and . . . spoil disposal sites for maintenance dredging in waters of the state."[16] (e.s.)
Thus, a number of statutes recognize health systems and facilities as coming within the scope of the term "public facilities."
Based on the use of the terms "infrastructure" and "public facilities" in section 212.055(2), Florida Statutes, and the meanings of those terms, it is my opinion that the Town of Century my use its share of the proceeds of the local government infrastructure surtax to acquire and/or renovate a building to be used to provide primary health care to indigent municipal residents. This conclusion assumes that the terms of any referendum to be approved by the voters or already approved by the voters contains a general description of the purposes for which the tax will be used which would accommodate such use.
Nothing in section 212.055(2), Florida Statutes, conditions the expenditure of surtax funds on reaching a particular stage of contract negotiations with a provider for performing health care services at the designated public facility. Rather, the Legislature has provided local governments some flexibility in accomplishing the purposes of the act. However, the governing body of the Town of Century is under a legal obligation to ensure that these funds are spent for a purpose authorized by the statute and encompassed by the ballot language. Any other use of such funds may subject the officers responsible to legal liability for the improper expenditure of public funds.[17]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, Walter E. Heller Company Southeast, Inc. v. Williams,450 So.2d 521 (Fla. 3d DCA 1984), rev. den., 462 So.2d 1108
(Fla. 1985); State ex rel. Seaboard Air Line R. Co. v. Gay,35 So.2d 403 (Fla. 1948); Maas Brothers, Inc. v. Dickinson,195 So.2d 193 (Fla. 1967).
[2] See generally, Contractors and Builders Association ofPinellas County v. City of Dunedin, 329 So.2d 314, 317 (Fla. 1976). See also, City of Tampa v. Birdsong Motors, Inc.,261 So.2d 1 (Fla. 1972) (municipality's power to tax is subject to the restrictions in Art. VII, s. 9, Fla. Const.)
[3] See, e.g., Ops. Att'y Gen. Fla. 00-06 (2000) (statute requires that general description of projects to be funded by local government infrastructure surtax be placed on ballot to approve imposition of surtax and revenues from surtax must be expended on projects that fall within the general description contained on the ballot); 90-23 (1990) (city may not provide for rebate of ad valorem taxes collected on newly annexed property, in absence of constitutional or statutory authority allowing such action); 87-45(1987) and 84-65 (1984) (units of local government have no inherent power to impose taxes; the taxing power must be derived from the state).
[4] Section 212.055(2)(c), Fla. Stat., as amended by s. 33, Ch.2001-60, Laws of Fla.
[5] Section 212.055(2)(d)1., Fla. Stat. And see, s.212.055(2)(e), Fla. Stat., authorizing school districts, counties and municipalities receiving proceeds under this subsection to pledge such proceeds for the purpose of serving new bond indebtedness incurred pursuant to law.
[6] See, Supreme Forest Woodmen Circle v. Hobe Sound Company,189 So. 249 (1939); Dickinson v. Stone, 251 So.2d 268, 273-274
(Fla. 1971) (it is a violation of an elemental principle in the administration of public funds for one who is charged with the trust of their proper expenditure not to apply those funds to the purposes for which they are raised).
[7] Attorney General's Opinion 96-26 (1996). And see, Ops. Att'y Gen. Fla. 86-39 (1986), 82-54 (1982), and 77-26 (1977). See also, 85 C.J.S. Taxation s. 1057(b), p. 646 (taxes levied and collected for particular purposes, cannot ordinarily be legally utilized for, or diverted to, any other purpose).
[8] Compare, s. 212.055(2)(g)2., Fla. Stat., authorizing a municipality located within a county with populations of 50,000 or less on April 1, 1992, or within a county designated as an area of critical state concern on the effective date of the act that imposed the surtax before July 1, 1992, to use the proceeds and interest for any public purpose provided certain conditions are met, including the amendment to the surtax ordinance.
[9] See, Op. Att'y Gen. Fla. 00-06 (2000).
[10] Section 212.055(2)(d)1., Fla. Stat.
[11] Section 212.055(2)(d)2.a., Fla. Stat.
[12] See, House of Representatives Committee on Community Affairs Staff Analysis on CS/CS/HB 1421, dated June 8, 1987.
[13] See, Ops. Att'y Gen. Fla. 99-24 (1999), 95-73 (1995), 95-71 (1995), 94-46 (1994), and 92-81 (1992).
[14] Section 163.3164(24), Fla. Stat. And see, s. 163.400(1)(f), Fla. Stat., for a substantially similar definition.
[15] Sections 163.3220-163.3243, Fla. Stat.
[16] Section 189.403(7), Fla. Stat.
[17] See, e.g., Art. IV, s. 7(c), Fla. Const., authorizing the Governor to suspend from office any elected municipal officer indicted for a crime; s. 112.3173, Fla. Stat., specifying felonies involving breach of public trust and other specific offenses by public officials; and s. 112.51, providing for the suspension or removal from office of municipal officers for certain offenses.